Affirmed and Memorandum Opinion filed May 27, 2004









Affirmed and Memorandum Opinion filed May 27, 2004.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00858-CR

____________

 

MARK
SORRELL PORTER, Appellant

 

V.

 

THE STATE
OF TEXAS, Appellee

 

___________________________________________________

 

On Appeal from the 337th District Court

Harris County, Texas

Trial Court Cause No. 879,552

 

___________________________________________________

 

M E M O R A N D U M   O P I N I O N

In six issues, appellant Mark
Sorrell Porter challenges his conviction for capital murder, alleging (1) the
trial court erred in failing to remove a juror in violation of both the federal
and state constitutions; (2) the trial court erred in admitting appellant=s
audiotaped and videotaped statements because the statements were made
involuntarily in violation of the federal constitution; and (3) the evidence
was legally and factually insufficient to show appellant intended to cause the
death of the complainant.  We affirm. 








I.  Factual and Procedural Background

At approximately six in the
morning on October 4, 1992, Houston Police Department Officer C.L. Hall
received a call from dispatch about a Asuspicious
event@ in
southwest Harris County.  When he
arrived, he saw a Mercedes and a Honda in the middle of the street in what
appeared to be an accident.  He
approached the Mercedes and observed a bullet hole in the driver=s side door
and a man slumped in the seat, apparently dead. 
The deceased was later identified as Charles Clark, a newspaper carrier
for the Houston Post.  The doors
and windows to the Mercedes were closed except for the sunroof.  The Honda appeared to have been hit.  Based on their observations, the police
officers surmised that the shooting had taken place in the 5600 block of
Greencraig and the complainant=s
Mercedes had travelled backwards down to the end of the 5700 block, hitting
parked vehicles and meandering into front yards before coming to rest where
authorities eventually found it. 
Officers recovered a cartridge case from a .380 semiautomatic pistol in
the middle of the street in the 5600 block.








Nearly nine years later, in June
of 2001, Officer Tony Huynh received a phone call from appellant, stating he
wanted to come to the police station and discuss the Clark murder.  Officers were dispatched to bring appellant
back to the station while Officer Huynh remained on the phone with him.  Once at the station, appellant and Officer
Huynh entered an interview room and Officer Huynh obtained an audiotape
recorder.  According to Officer Huynh=s
testimony, he read appellant his rights and appellant indicated that he
understood them.  After speaking with
appellant, Officer Huynh attempted to locate the case file, but due to computer
problems caused by Tropical Storm Allison, he was unable to do so.  His sergeant made the decision to place
appellant in jail until information on the case could be found.  Sergeants Waymon Allen, Jr. and Boyd Smith
took over the search for the information on the next shift.  After listening to the recording, Sergeant
Allen became concerned about the quality of the audiotape.  Sergeant Allen and Sergeant Jim Binford, who
had worked on the case in 1992, went to the jail where appellant was being held
to inquire whether appellant would provide another statement.  According to Sergeant Allen=s
testimony, Sergeant Binford read appellant his rights and appellant again
indicated that he understood them.  The
officers then took appellant before a magistrate judge, where appellant was
read his rights a third time.  Afterward,
appellant and the officers drove back to the police station.  There, appellant was read his rights a fourth
time before he provided the videotaped statement.

Appellant was charged by
indictment with the offense of capital murder for intentionally causing the
death of the complainant while in the course of committing or attempting to
commit a robbery.  See Tex. Pen. Code Ann. '
19.03(a)(2) (Vernon 2003).  The jury
charge included the offenses of murder and capital murder, and the jury found
appellant guilty of capital murder.  The
trial court assessed punishment at life imprisonment in the Texas Department of
Criminal Justice, Institutional Division.  


II.  Issues Presented

(1)B(2)           Did the trial court err by failing to remove a
juror after discovering the juror did not reveal information during voir dire?

(3)B(4)           Did the trial court err in admitting appellant=s audiotaped and
videotaped statements that appellant claims were made involuntarily while he
was allegedly in custody?

(5)B(6)           Was the
evidence legally and factually sufficient to show appellant had the intent to
cause the death of the complainant at the time of the alleged offense?

III.  Analysis

A.        Did the trial court err by failing to
remove a juror after discovering the juror did not reveal information during
voir dire?

 








In his first two issues,
appellant contends the trial court erred by failing to remove a juror when it
was discovered that the juror did not reveal during voir dire that (1) he
recognized the complainant as the husband of one of the teachers at the school
his daughter attended, and (2) he went to the complainant=s
funeral.  Appellant argues that, as a
result, the trial court impeded his counsel=s right
to conduct voir dire and to intelligently exercise peremptory strikes in
violation of the federal and state constitutions.

During voir dire, the trial court
inquired whether anyone on the jury panel recognized the name of the
complainant Charles T. Clark.  From the
trial court=s response, it appears no one
replied affirmatively.  Later in voir
dire, appellant=s trial
counsel inquired whether anyone on the jury panel knew any of the witnesses
scheduled to testify.  Again, no one
responded affirmatively.  Following the
State=s opening
statement and before the prosecutor called the State=s first
witness, juror John Eberle interrupted the trial court.  The trial court asked that he approach the
bench, and with counsel present, Eberle notified the trial court that he
thought he recognized the names of the complainant and his wife because his
daughter went to a high school where the husband of one of the teachers was
killed while on a paper route in a Mercedes Benz.[1]  The trial court then inquired whether the
complainant=s wife taught Eberle=s
daughter.  Eberle could not recall, but
thought that the complainant=s wife
may have taught his daughter at some point while she was in high school.  He stated that he never heard anything
further about the case and did not know the complainant or his wife other than
seeing the wife at the funeral.  Eberle
had driven his daughter and some of her friends to the funeral nearly a decade
before.








Appellant=s trial
counsel asked Eberle what effect such knowledge would have on him serving as a
juror.  He stated he would try to listen
to the facts and would not give more credibility to Mrs. Clark=s
testimony because he knew who she was. 
After the juror returned to his seat, appellant=s trial
counsel stated that he would have used one of his peremptory strikes on Eberle
had he been aware of Eberle=s
knowledge during voir dire.  The trial
court postponed hearing further objections from appellant=s trial
counsel until the following day.  The
State presented several of its witnesses in the meantime.

The next day, before testimony
resumed, the trial court conducted a discussion with Eberle outside the
presence of the rest of the jury.  Both
the trial court and appellant=s trial
counsel inquired whether Eberle thought his knowledge of the complainant and
his wife would influence him.  Eberle
responded that he would try his best, reiterating that he did not know what
happened in the case and had only escorted his daughter and three or four other
girls from her class to the funeral. 
Appellant=s trial
counsel objected to Eberle remaining on the jury and requested the alternate
juror take his place.  The trial court
overruled the objection.  Appellant=s trial
counsel renewed his objection when the trial court excused the alternate juror
as the jury retired for deliberations. 
The trial court again overruled the objection.








If a juror withholds material information during
the voir dire process, the parties are denied the opportunity to exercise their
challenges, thus hampering their selection of a disinterested and impartial
jury.  See Armstrong v. State, 897
S.W.2d 361, 363 (Tex. Crim. App. 1995) (per curiam).  The Court of Criminal Appeals addressed a
situation similar to the one before this court in Decker v. State.  In Decker, after the jury had been
selected and sworn, a juror recognized the complainant as a co-worker.  See 717 S.W.2d 903, 906 (Tex. Crim.
App. 1983) (op. on reh=g).  The trial court refused to allow appellant to
peremptorily strike the juror so that he could be replaced.  See id.  The Court of Criminal Appeals found the
record showed the juror had not intentionally given false information during
the voir dire examination, but only realized that he knew the complainant after
seeing him.  See id. at 907. In
addition, the Decker court found the undisclosed information was not
material in that the juror=s
relationship with the complainant was only as a work acquaintance, and the two
men had never socialized together or had any type of friendship.  Id. 
Thus, the court concluded there was no showing that the relationship had
any potential for bias or prejudice by the juror. See id. at 907B08.

Here, the trial judge asked the jury panel whether
they knew the complainant.  Appellant=s trial
counsel then inquired whether anyone on the panel knew any of the witnesses,
including the complainant=s
wife.  Based on juror Eberle=s
statements to the trial court, the record does not indicate Eberle was
intentionally withholding information from appellant=s trial
counsel during voir dire when he failed to respond.  Rather, he did not realize he knew the
complainant and his wife until the State provided more facts about the victim
and the crime, which occurred ten years before trial.  Eberle came forward immediately after the
State made its opening statement.  The
record also shows Eberle did not have a personal relationship with the
complainant or the complainant=s
wife.  He admitted knowing who they were
because the complainant=s wife
taught at his daughter=s school,
and Eberle explained that he attended the funeral within that context.  He also stated that he was not aware what
happened in the case beyond his initial knowledge of it.  Although Eberle prefaced questions about
whether he would be influenced by this information with the fact that he would Atry@ not to
let it influence him, he did state that he would not weigh the credibility of
the witnesses any differently because of his knowledge of the complainant and
his wife.    

Under these circumstances, where the record does
not show Eberle intentionally withheld material information, the trial court did
not err by overruling defense counsel=s
objections to juror Eberle=s
presence on the jury.  Accordingly, we
overrule appellant=s first
and second issues. 

B.        Did the trial court err in admitting appellant=s audiotaped and
videotaped statements that appellant claims were made involuntarily while he
was allegedly in custody?

 

In his third and fourth issues, appellant contends
the trial court erred in admitting his audiotaped and videotaped statements
because the statements were allegedly made involuntarily while appellant was in
custody.  Appellant alleges the trial
court=s error
violated his federal constitutional right to due process.








The State contends appellant has not preserved the
issue of voluntariness for appellate review because he did not raise that
ground for excluding the statements with the trial court.  Appellant filed a motion to suppress on June
22, 2001, seeking to exclude any evidence seized during an alleged illegal
search and seizure.  The motion did not
specifically mention the statements.  On
the first day of trial, the court held a hearing regarding appellant=s
audiotaped and videotaped statements.[2]  Appellant testified that he had been
subjected to mental manipulation while in prison which caused him to do things
against his will.  His father testified
to appellant=s mental instability and stated
that he thought appellant=s
psychotic behavior caused appellant to confess to police.  The trial court also heard testimony from the
officers involved in taking appellant=s
statements.  At the conclusion of the
hearing, the trial court admonished the prosecutor to avoid discussing anything
on the tapes related to other offenses committed by appellant, and to avoid
divulging the location of codefendants and charges brought against them.  With those limitations, the trial court
reserved further ruling on the tapes until he had reviewed them.








During the trial, outside the presence of the
jury, the trial court again took up the issue of the audiotaped and videotaped
statements.  Appellant=s trial
counsel objected to the admission of oral statements made by appellant to
Officer Huynh on the basis that such statements did not comply with article
38.22.[3]  Appellant=s trial
counsel then deduced that the audiotaped statement was the fruit of an
inadmissible oral statement.  The State
argued article 38.22 did not apply because appellant was not in custody at the
time he made the statements. The trial court ruled both the audiotaped and the
videotaped statements were admissible because appellant received the proper
warnings on both tapes and voluntarily waived his rights before freely giving
the statements.  The trial court also
found appellant to be sane at the time he gave the statements.  

The record does not contain a motion or objection
that specifically raises the issue of voluntariness, but the ground seems
apparent from the testimony at the confession hearing, and the trial court
ruled on the issue expressly.  See
Tex. R. App. P. 33.1(a)(1)B(2).  Assuming appellant has preserved the
complained-of error on this issue, we find no merit in his claim.

We review the trial court=s
decision on a motion to suppress under an abuse of discretion standard.  See Villarreal v. State, 935 S.W.2d
134, 138 (Tex. Crim. App. 1996).  Whether
a confession is voluntary is a mixed question of law and fact.  Garcia v. State, 15 S.W.3d 533, 535
(Tex. Crim. App. 2000).  Appellate courts
should give almost absolute deference to trial court determinations of
historical fact supported by the record, especially when those findings are
based on an evaluation of credibility and demeanor.  Guzman v. State, 955 S.W.2d 85, 89
(Tex. Crim. App. 1997).  Appellate courts
should afford the same amount of deference to trial court rulings on mixed
questions of law and fact when the resolution of those ultimate issues turns on
an evaluation of credibility and demeanor. 
Id.  However, an appellate
court may review de novo mixed questions of law and fact that do not fit
within that category.  Id.








Article 38.21 of the Texas Code of Criminal
Procedure requires the statement to have been Afreely
and voluntarily made without compulsion or persuasion.@  Tex.
Code Crim. Proc. Ann. art. 38.21 (Vernon 1979).  In determining the question of voluntariness,
a court should consider the totality of circumstances under which the statement
was obtained.  Creager v. State,
952 S.W.2d 852, 855 (Tex. Crim. App. 1997). 
A defendant=s mental
deficiency alone is not determinative of the voluntariness of the confession,
but is only one factor to be considered. 
See Penry v. State, 903 S.W.2d 715, 744 (Tex. Crim. App. 1995).  In considering the impact of a defendant=s mental
deficiency, the issue becomes whether the defendant=s mental
impairment rendered him incapable of understanding the meaning and effect of
his confession.  See Cornealius v.
State, 870 S.W.2d 169, 175 (Tex. App.CHouston [14th Dist.] 1994), aff=d, 900
S.W.2d 731 (Tex. Crim. App. 1995). 
Further, absent evidence of police coercion related to the taking of the
confession, a defendant=s mental
condition alone should not render the statement involuntary on constitutional
grounds.  See Colorado v. Connelly,
479 U.S. 157, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986).

In this case, at the confession hearing, the State
offered testimony from Officer Huynh, who took appellant=s
audiotaped statement, and Sergeant Allen, who took appellant=s
videotaped statement.  Both officers
testified that appellant was calm and cooperative.  They stated that nothing in appellant=s
demeanor caused them to believe he had a mental problem.  Officer Huynh advised appellant of his rights
on the audiotape before appellant made the statement and appellant indicated he
understood those rights.  After the
statement, Officer Huynh allowed appellant to make a sandwich in the officers=
breakroom and watch television in the family room.  Appellant was held in the jail temporarily
until officers on the next shift could gather more information about the
case.  Sergeant Allen and another officer
went to the jail to inquire whether appellant would be willing to provide
another statement.  Prior to giving the
videotaped statement, appellant was read his rights three more times, including
once by a magistrate judge.  Appellant
and his father, in turn, testified to appellant=s mental
condition.

With no evidence in the record of police coercion
and given the conflicting testimony concerning appellant=s mental
state at the time he made the statements, we find the trial court did not abuse
its discretion in finding the statements to have been voluntarily made.  Accordingly, we overrule appellant=s third
and fourth issues. 

C.        Was the evidence legally and factually sufficient to show
appellant had the intent to cause the death of the complainant at the time of
the alleged offense?

 








In his fifth and sixth issues, appellant contends
the evidence is legally and factually insufficient to show he intended to cause
the death of the complainant at the time of the murder.  Specifically, appellant argues his audiotaped
and videotaped statements were the only evidence offered at trial to
demonstrate any intent, and while the statements indicate appellant=s intent
to rob the complainant, they do not clearly reflect appellant=s
specific intent to cause the death of the complainant.

In evaluating a legal-sufficiency challenge, we
view the evidence in the light most favorable to the verdict.  Wesbrook v. State, 29 S.W.3d 103, 111
(Tex. Crim. App. 2000).  The issue on
appeal is not whether we, as a court, believe the State=s
evidence or believe that appellants= evidence
outweighs the State=s
evidence.  Wicker v. State, 667
S.W.2d 137, 143 (Tex. Crim. App. 1984). 
The verdict may not be overturned unless it is irrational or unsupported
by proof beyond a reasonable doubt.  Matson v. State, 819 S.W.2d 839, 846 (Tex.
Crim. App. 1991).  The jury, as the trier
of fact, Ais the sole judge of the
credibility of the witnesses and of the strength of the evidence.@  Fuentes v. State, 991 S.W.2d 267, 271
(Tex. Crim. App. 1999).  The jury may
choose to believe or disbelieve any portion of the witnesses=
testimony.  Sharp v. State, 707
S.W.2d 611, 614 (Tex. Crim. App. 1986). 
When faced with conflicting evidence, we presume the trier of fact
resolved conflicts in favor of the prevailing party.  Turro v. State, 867 S.W.2d 43, 47 (Tex.
Crim. App. 1993).  Therefore, if any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt, we must affirm.  McDuff v. State, 939 S.W.2d 607, 614 (Tex.
Crim. App. 1997).








As applied to appellant=s case, a
person commits the offense of capital murder if the person commits murder as
defined under section 19.02(b)(1) and the person intentionally commits the
murder in the course of committing or attempting to commit robbery.  See Tex.
Pen. Code Ann. '
19.03(a)(2).  Murder is defined under
Texas Penal Code section 19.02(b) as intentionally or knowingly causing the
death of an individual. '
19.02(b)(1).  The indictment in appellant=s case
charged him with intentionally causing the death of the complainant by shooting
the complainant with a firearm while in the course of committing and attempting
to commit a robbery.  

Intent is a fact question for the jury and is
almost always proven through evidence of the circumstances surrounding the
crime.  See Childs v. State, 21
S.W.3d 631, 635 (Tex.
App.CHouston [14th Dist.] 2000,
pet. ref=d).  Intent may be inferred from words and conduct
of the accused.  Id.  The jury may infer the intent to kill from
the use of a deadly weapon unless it would not be reasonable to infer that
death or serious bodily injury could result from the use of the weapon.  See Ross v. State, 861 S.W.2d 870, 873
(Tex. Crim. App. 1992).  Furthermore,
where a deadly weapon is fired at close range, and death results, the law
presumes an intent to kill.  Childs,
21 S.W.3d at 635. 

Here, the jury heard the audiotaped statement made
by appellant to Officer Huynh and the videotaped statement taken by Sergeant
Allen.  In both statements, appellant
explained that when the complainant would not give appellant a newspaper after
he asked for one three times, appellant cocked a .380 semiautomatic weapon and
placed it inside the sunroof of the complainant=s
vehicle.  According to appellant=s
statements, the complainant attempted to drive away and appellant ran alongside
the car, firing shots.  Appellant=s
recounting of these events was corroborated by testimony from Sergeant Binford,
who stated that the trajectory of the bullet indicated the shooter was next to
the vehicle shooting through the sunroof. 
On the videotape, appellant claims that his intent was to rob the
complainant and that he was only shooting to wound him.  Based on all of the evidence before the jury,
a rational trier of fact could have found appellant had the intent to cause the
death of the complainant beyond a reasonable doubt.  Accordingly, we overrule appellant=s fifth
issue challenging the legal sufficiency of the evidence to support the intent
to cause the complainant=s death.








When evaluating a challenge to the factual
sufficiency of the evidence, we view all the evidence in a neutral light and
inquire whether the jury was rationally justified in finding guilt beyond a
reasonable doubt.  Zuniga v. State,
No. 539-02, 2004 WL 840786, at *7, ___ S.W.3d ___, ___ (Tex. Crim. App. Apr.
21, 2004).  A reviewing court may find
the evidence factually insufficient in two ways.  Id. 
First, when considered by itself, the evidence supporting the verdict
may be too weak to support the finding of guilt beyond a reasonable doubt.  Id. 
Second, after weighing the evidence supporting the verdict and the
evidence contrary to the verdict, the contrary evidence may be strong enough
that the beyond-a- reasonable-doubt standard could not have been met.  Id. 
In conducting the factual-sufficiency review, we must employ appropriate
deference so that we do not substitute our judgment for that of the fact
finder.  Id. at *4.  Our evaluation should not intrude upon the
fact finder=s role as the sole judge of the
weight and credibility given to any witness=s
testimony.  Cain v. State, 958
S.W.2d 404, 407 (Tex. Crim. App. 1997).  

When reviewing a factual-sufficiency challenge, we
must discuss the evidence appellant claims is most important in allegedly
undermining the jury=s
verdict.  Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App.
2003).  Appellant makes the same
arguments in his factual-sufficiency challenge as in support of his
legal-sufficiency challenge.  After
reviewing all the evidence without the prism of Ain the light most favorable to the
prosecution,@ we cannot say the verdict should be
set aside because it is Aso contrary to the overwhelming weight of the evidence as to
be clearly wrong and unjust.@  Johnson, 23
S.W.3d at 6B7. 
Accordingly, we overrule appellant=s sixth issue. 

Having overruled all of appellant=s issues,
we affirm the trial court=s
judgment.

 

/s/        Kem Thompson Frost

Justice

 

Judgment
rendered and Memorandum Opinion filed May 27, 2004.

Panel
consists of Justices Edelman, Frost, and Guzman.

Do Not
Publish C Tex. R. App. P. 47.2(b).

 











[1]  The record
reads as follows:

 

Juror Eberle: Yesterday when
you asked us if we knew any of the people, witnesses or anything, I didn=t think I did, but after your description, my daughter
went to Holy Ghost High School and there was a teacher named Ms. Clark.  Her husband was killed.  He was driving a Mercedes Benz and he was
doing a paper route, and I went to the funeral with them.  He was a black man, about 45 years old, 50
years old.  I am just telling you this
because I had this situation.  I
apologize.  I had no idea who it was.





[2]  The record is
not clear as to the purpose of the hearing. 
However, both the prosecution and appellant=s trial counsel refer to it in the record as the Aconfession hearing.@   





[3]  The record is
not clear as to the statements to which appellant=s trial
counsel is referring.  It appears trial
counsel was objecting to Officer Huynh supplementing the audiotaped statement
with his recollection of what appellant told him.