Tommy Maverick CHILDS, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–98–00531–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

June 1, 2000.

632

Stephen Morris, Houston, for appellants.

Julie Klibert, Houston, for appellees.

Panel consists of Justices SEARS, DRAUGHN and HUTSON–DUNN.[*]

## O P I N I O N

D. CAMILLE HUTSON–DUNN, Justice (Assigned).

Tommy Maverick Childs, appellant, was certified to stand trial as an adult and was convicted of capital murder in the robbery-slaying of a cab driver. Because he was a juvenile at the time of the offense, his punishment was automatically assessed at life in prison. In nine points of error he contends the trial court erred in not suppressing his second and third statements, questions the sufficiency of the evidence and argues the jury should have been instructed on the lesser included offense of murder. We affirm.

### STATEMENT OF FACTS

In his third through eighth points of error appellant complains of the sufficiency of the evidence to support his conviction. We will therefore summarize the evidence heard by the jury.

In the early morning hours of February 5,1997, Dewayne Lewis walked to the bus stop to get a taxi that his mother had called. He saw Kevin Collins, a person that he knew from the neighborhood, at the bus stop at the corner of Calumet and Live Oak. Collins agreed to go with him to get something to eat. In a few minutes, appellant walked up and asked to join them. Appellant told Lewis that he was going to rob the first cab that came by. Lewis, who was on probation, told him that he would "kick his ass" if he did. Appellant said he was kidding and did not even have a gun. Lewis did not see a gun.

When the cab arrived, appellant got in the front seat, Lewis got in the back seat behind the appellant and Collins got in the back seat behind Cisroe Taylor, the taxi driver. Appellant and Taylor were talking in a way that led Lewis to believe they knew one another. Appellant wanted Taylor to go to the Bayou Landing Apartments so he could buy marijuana. Lewis argued with him but appellant persuaded Taylor to drive to the back side of the apartments. Appellant got out and the others remained in the cab. Appellant returned, opened the front passenger door, leaned over, and pointed a gun at Taylor. He told the driver to give him all his money and the keys. Lewis said "what the f—wrong with you" and jumped out of the cab. Collins also got out of the cab. Appellant ordered Taylor out of the cab, grabbed the microphone and threw it out of the passenger side of the car.

As Taylor got out of the car, he asked Lewis to please ask appellant not to shoot him. Lewis told the appellant not to shoot and even told him that the police were coming. Appellant paid no attention and kept the gun pointed at Taylor. Lewis walked away from the cab, around a corner, and heard two shots fired. Lewis ran home. The next day he ran into the appellant and asked him if he had shot Taylor. Appellant admitted to shooting Taylor, but said that he believed that the driver was going for a gun because as he was getting

---

[*] Senior Justices Ross A. Sears, Joe L. Draughn, and D. Camille Hutson–Dunn sitting by assignment.

out of the cab, he had one hand up and the other hand under the seat.

Houston Police Officer Roger Mahoney said Taylor was found about 7 a.m. the next morning, sitting in the driver's seat of his cab with his left foot on the pavement. His radio microphone was found about 20 feet from the passenger side of the cab.

Houston Police Officer Jay Hammerly recovered a five-shot pistol from under the cab driver's seat, and said one bullet was recovered from the back seat.

Dr. Tommy Brown of the Harris County medical examiner's office said Taylor died from a gunshot wound to the back which struck his heart. Brown said the bullet traveled from left to right on a rising trajectory and lodged behind the victim's breastbone.

Michael Lyons, a firearms examiner with the Houston Police Department, said the two recovered bullets and the two recovered shell casings were all fired from the same weapon. The bullets would not have fit the five-shot pistol found under Taylor's seat.

Appellant testified on his own behalf. He said he was with Dewayne Lewis and Kevin Collins on the day of the robbery when they flagged down the cab. He went to buy marijuana at one of the apartments; when he came back, he saw Collins, seated in the back seat, with a stranglehold on Taylor, in the front seat. He said that when he saw Taylor pulling a gun from under the seat of the cab, he pulled a gun and pulled the trigger twice. Appellant said he did not intend to shoot Taylor and did not mean to kill Taylor, but that he was afraid for his own safety when he saw Taylor pulling out a gun.

Childs also said he told the officers he was an adult because he knew he was wanted on a juvenile arrest warrant.

## SUFFICIENCY OF THE EVIDENCE

Childs brings three points of error challenging the legal sufficiency of the evidence to support his conviction, and three points of error challenging the factual sufficiency of his conviction. We will address these points first.

■ *Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. See Jackson v. Virginia*, 443 U.S. 307, 315–16, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 320, 99 S.Ct. 2781, 2789; *Johnson v. State*, 871 S.W.2d 183, 186 (Tex.Crim.App.1993). The evidence is examined in the light most favorable to the jury's verdict. *Jackson*, 443 U.S. at 320, 99 S.Ct. 2781, 61 L.Ed.2d 560; *Johnson*, 871 S.W.2d at 186. The standard is the same in both direct and circumstantial evidence cases. *Geesa v. State*, 820 S.W.2d 154, 162 (Tex.Crim.App.1991). All of the evidence is considered by the reviewing court, regardless of whether it was properly admitted. *Johnson*, 871 S.W.2d at 186; *Chambers v. State*, 805 S.W.2d 459, 460 (Tex.Crim.App.1991).

The jury is the trier of fact, and is the ultimate authority on the credibility of witnesses and the weight to be given to their testimony. *See* Tex.Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex.Crim.App. [Panel Op.] 1981). It is for the jury as trier of fact to resolve any conflicts and inconsistencies in the evidence. *Bowden v. State*, 628 S.W.2d 782, 784 (Tex.Crim.App. 1982).

■ This court also has jurisdiction to review the factual sufficiency of the evidence. *Johnson v. State*, no. 1915–98, 2000 WL 140257 (Tex.Crim.App. February 9, 2000). Our review begins with the presumption that the evidence is legally sufficient. *Jones v. State*, 944 S.W.2d 642, 647 (Tex.Crim.App.1996). We must look to all the evidence "without the prism of 'in the light most favorable to the verdict.'" *Cle-*

*wis v. State,* 922 S.W.2d 126, 129 (Tex. Crim.App.1996). In our review, we must be careful not to intrude on the jury's role as the sole judge of the credibility of the witnesses or the weight to be given their testimony. *See Santellan v. State,* 939 S.W.2d 155, 164 (Tex.Crim.App.1997). We may set aside the verdict on factual sufficiency grounds only when that verdict is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See Clewis,* 922 S.W.2d at 134–135.

### a. Intent to Kill

 In his third and fourth points of error appellant contends the evidence was legally and factually insufficient, respectively, to prove that he had the intent to cause the death of an individual at the time of the crime. Intent and knowledge are fact questions for the jury, and are almost always proven through evidence of the circumstances surrounding the crime. *Robles v. State,* 664 S.W.2d 91, 94 (Tex.Crim. App.1984); *Mouton v. State,* 923 S.W.2d 219, 223 (Tex.App.—Houston [14th Dist.] 1996, no pet.). Intent may be inferred from words and conduct of the accused. *See Hernandez v. State,* 819 S.W.2d 806, 810 (Tex.Crim.App.1991). Intent to kill may be inferred from use of a deadly weapon, unless in the manner of its use it is reasonably apparent that death or serious bodily injury could not result. *Flanagan v. State,* 675 S.W.2d 734, 744 (Tex. Crim.App.1984); *Bell v. State,* 501 S.W.2d 137, 138–139 (Tex.Crim.App.1973). Furthermore, where a deadly weapon is fired at close range, and death results, the law presumes an intent to kill. *Womble v. State,* 618 S.W.2d 59, 64 (Tex.Crim.App. [Panel Op.] 1981).

 Here the jury had Dewayne Lewis's testimony that appellant pointed a loaded gun at the victim, and that after he ran away he heard two shots. Two bullets, fired from the same gun, were recovered from the scene. We find this evidence, viewed in the light most favorable to the verdict, legally sufficient to support the jury's verdict on the issue of intent. Furthermore, we find this verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. We therefore overrule appellant's third and fourth points of error.

### b. The Underlying Felony

 In his fifth and sixth points of error appellant contends the evidence was insufficient to show an attempted or completed theft of Taylor's property. We disagree.

Briefly restated, the jury had evidence that a cab driver was shot dead in the middle of the night. They had eyewitness testimony that appellant pulled a gun on that cab driver and ordered him to hand over his money and the keys to his cab. We find both that a rational jury could have found that robbery was an underlying motive in the murder and that such a conclusion would not be so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust. We therefore overrule appellant's fifth and sixth points of error.

### c. Self–Defense

 In his seventh and eighth points of error appellant contends the evidence does not support his conviction because appellant was acting in self-defense. We interpret this point of error as an assertion that he proved he was acting in self-defense as a matter of law, or that the conclusion by the jury that he was not acting in self-defense was against the overwhelming weight of the evidence. The issue of self-defense was injected into the trial by appellant's third statement, in which he said he shot at Taylor in order to "keep him from doing something to me," and by his trial testimony, when he said he saw a gun in Taylor's hand as he struggled with Lewis. However, appellant neither requested nor received an instruction on self-defense; nor does he complain about the lack of such an instruction on appeal.

Viewed in the light most favorable to the verdict, as we must under our legal sufficiency review, appellant was in the process of robbing Taylor when he shot him. An actor who provokes the difficulty is not entitled to assert the justification of self-defense if he provoked the other's attempted use of force. TEX. PEN.CODE ANN. § 9.31(b)(4) (Vernon Supp.2000). Moreover, under our factual sufficiency review, the jury was free to reject appellant's version of events and accept Lewis's. We find this conclusion is not so against the great weight of the evidence as to be clearly wrong and unjust. Appellant's seventh and eighth points of error are overruled.

## MOTION TO SUPPRESS

In his first and second points of error appellant claims that the court erred in failing to suppress his second and third written statements because they were not taken in compliance with the Family Code.

During the hearing on appellant's motion to suppress, Houston police officer Jeffrey Wayne Holmes testified that he received a call from a confidential informant about the murder of Taylor. Based on the information he received from Smith, he went to the Calumet and Live Oak area where he patrols, and began looking for a person that fit the description and had the name "Tommy." He recognized the appellant from the description given to him and approached appellant. (Holmes testified that he met appellant a few days before when he responded to a disturbance call.) Appellant told him that his name was Eric. Officer Holmes, suspecting that this was a false name, asked him if his name was Tommy. Appellant finally admitted that Tommy was his real name, but told the officers that he was 17 years of age.

Officer Holmes asked appellant if he would talk to some investigators in homicide about a murder case; appellant said he had no problem with that. The officer then read him his *Miranda* rights as a precaution. He told appellant that he was not in custody, or under arrest, but he had to place handcuffs on him because it was department policy. Appellant said he had no problem with the handcuffs. When they arrived at the homicide division, Officer Holmes turned appellant over to Officer C.P. Abbondandolo, the handcuffs were taken off, and appellant was again told that he was not in custody or under arrest.

Abbondandolo said he was on the scene of the murder on February 6, 1997, and developed no suspects. Holmes brought the appellant to him and was told that the appellant's last name was Carrier. Appellant's handcuffs were taken off and he was told that he was not under arrest. Appellant gave his date of birth as 7–3–79; at the time, this would make him 18 years of age. Abbondandolo looked the appellant up on the computer under the name of Carrier but found nothing. He then asked for appellant's mother's name; appellant identified her as Brenda Childs. He denied knowing anything about the murder.

Another officer, Ken Vacharis, began talking with the appellant while Abbondandolo talked with Lewis, who came voluntarily to give a statement. Lewis' statement did not support the appellant's statement. Abbondandolo told Vacharis what Lewis had told him.

Vacharis testified that he spoke with the appellant in the interview room, told him that he was not in custody or under arrest. He was not in uniform, nor did he have a weapon. He checked the name that appellant had given him on the computer and found that appellant had given him the wrong name. He accessed the juvenile records and asked for help. When he re-entered the interview room after attempting to confirm the appellant's name, appellant told him that he was involved in a robbery-murder with two other "homeboys." Vacharis asked him if he wanted to put this in writing and appellant agreed. Vacharis then advised him of his rights. He was brought in at 5:00 p.m. and the statement was taken at 5:25 p.m. Vacharis considered that appellant was in custody

after he gave this first written statement and he advised the appellant of this. Vacharis had still not heard from the juvenile division. He believed he was dealing with an adult. They completed the statement at 5:50 p.m.

Abbondandolo had given Vacharis certain information that he had obtained from another witness. He discussed this information with the appellant. As a result of this discussion, the appellant elected to make a second statement. He started this second statement at 6:38 p.m. and finished at 7:00 P.M. He had all his warnings and was considered in custody. The officers believed that the appellant was an adult when he made his second statement.

After appellant completed the second statement, Vacharis heard from the Juvenile Division, gave them the appellant's mother's name, and learned that they had a listing for Tommy Childs who was age 15. There was a pick-up order for him because of a probation violation. He talked with the appellant again and appellant denied that he was Tommy Childs. The officer told him that they would have to have him fingerprinted to establish his identity. At this point the appellant admitted that he was Tommy Childs and that he was fifteen years old.

When the officers learned that Tommy Childs was a juvenile, they immediately took him to the magistrate's office. The magistrate took him into his chambers without anyone else present and gave the appellant his juvenile warnings in accordance with the Family Code.

After appellant received his warnings from the magistrate, he was turned over to Sergeant Robertson, who took the third statement. After taking the juvenile statement they returned to the court and appellant was given his second warning and signed the statement before the magistrate.

Travis Lewis, the magistrate, testified that he had given the appellant his juvenile warnings and had also certified the time that the appellant had given the statement. The magistrate read the statement and then had appellant read it to him. The appellant signed the statement in his presence and there was no indication that the appellant did not understand the warnings or what he signed.

■■■■ At a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *See Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App.1996); *In re L.R.*, 975 S.W.2d 656, 658 (Tex.App.—San Antonio 1998, no pet.). Consequently, we view the evidence in the light most favorable to the trial court's ruling and afford almost total deference to its findings if they are supported by the record. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997); *In re A.D.D.*, 974 S.W.2d 299, 305 (Tex.App.—San Antonio 1998, no pet.). When the resolution of the suppression issue does not turn upon an evaluation of credibility or demeanor, we review de novo the trial court's determination of the applicable law, as well as its application of the law to the facts. *See Guzman*, 955 S.W.2d at 89; *In re A.D.D.*, 974 S.W.2d at 305.

Because Childs was a juvenile at the time he made his statement, the Texas Family Code governs its admissibility. *Comer v. State*, 776 S.W.2d 191, 196 (Tex. Crim.App.1989); *Williams v. State*, 995 S.W.2d 754, 757 (Tex.App.-San Antonio 1999, no pet. h.). The code provides that a written statement made by a juvenile while in custody is not admissible unless certain waivers are made in the presence of a magistrate. *See* TEX. FAM.CODE ANN. § 51.09(b)(1)(G) (Vernon 1996) (now found at TEX. FAM.CODE ANN. § 51.095(a)(1)(C) (Vernon Supp.2000)).

■■■ As a preliminary matter, we find the third statement was taken in compliance with the Family Code and therefore overrule appellant's second point of error. However, the State concedes, as it must, that the second statement was not taken in

compliance with the Family Code. The State argues that appellant waived the extra protections embodied in the Family Code by lying about his age and identity.

■ Properly resolving this point of error requires resolving what type of right is implicated. If the right is waiveable, we must next determine whether appellant's actions worked an effective waiver.

There are three categories of rights. The first set of rights are those that are considered so fundamental that implementation of these requirements is not optional and cannot, therefore, be waived or forfeited by the parties. *See Marin v. State*, 851 S.W.2d 275, 279 (Tex.Crim.App.1993). The second category of rights are those that must be implemented by the system unless expressly waived. *Marin*, 851 S.W.2d at 278–79. The third set of rights are those that the trial court has no duty to enforce unless requested, and the law of procedural default applies. *See Marin*, 851 S.W.2d at 279. This analysis has been explicitly endorsed and extended to the juvenile offender context. *See In re C.O.S.*, 988 S.W.2d 760 (Tex.1999).

We find that the rights the appellant claims were violated would fall within the second category of rights, which must be implemented by the system unless waived. *See In the Matter of G.A.T.*, 16 S.W.3d 818 (Tex.App.-Houston [14th Dist.] 2000, no pet. h.). In *G.A.T.*, we found that a juvenile suspect's inaction in not asserting his right to be taken to a juvenile processing area does not waive this right. A different situation is presented in our case, however. It was not appellant's inaction which caused the *de facto* waiver of his right to be held as a juvenile; rather, it was his affirmative action in misleading officers as to his identity and age that led to the taint of his second statement. And Texas courts have historically taken a dim view of such claims.

Waiver is defined as "the intentional or voluntary relinquishment of a known right, or such conduct as warrants an inference

of the relinquishment of such right." Black's Law Dictionary 1580 (6th Ed.1990); *see also Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); *Marin*, 851 S.W.2d at 279.

Texas appellate courts, confronted with the question of juveniles who lie about their ages to law-enforcement personnel, have consistently held against the juvenile. *See Williams v. State*, 995 S.W.2d 754 (Tex.App.-San Antonio 1999, no pet. h.); *In the Matter of D.M.*, 611 S.W.2d 880 (Tex.App.-Amarillo 1980, no writ).

In *Williams*, appellant was arrested on theft charges and gave his older brother's name and date of birth. Based on this information, officers booked him into the Bexar County Jail. *Williams*, 995 S.W.2d at 758. An officer who suspected he was a juvenile, and suspected he was involved in a shooting, convinced Williams to give a statement; he was taken to a magistrate and given his juvenile warnings, although the statement was taken in a homicide office. *Id.* The court held that this statement was admissible, even though the dictates of the Family Code were not followed. *Id.* at 758–759. In a footnote, the court found that Williams presented a less compelling case for exclusion of the statement because the dictates of the Family Code were in large part defeated by his own misrepresentations. *Id.* at 759, fn. 3.

In *D.M.*, appellant was arrested and charged as an adult; it was later discovered that he had concealed his true age. *Id.*, 611 S.W.2d at 885. On appeal D.M. argued that, because he was treated as an adult until his true age was fixed, had so abridged the protections provided him under the Family Code that further proceedings should be barred. *Id.* at 886. The court disagreed: "Conformably, it cannot be reasonably said that one, who negates the operation of the Texas Family Code guarantees by misrepresenting his age, is entitled to claim the benefit of the guarantees during the period of his misrepresentation." *Id.* at 886.

&gt;

The record supports the fact that the officers had no reason to believe that the appellant was not an adult. The appellant said he was 17 while he was actually 15. In fact, appellant's second statement began with the assertion that "My name is TOMMY RAY CARRIER. I am 17 years old." (emphasis in original) The trial court was able to view the appellant and the appellant's pictures and find that the officers' conclusion that appellant appeared to be 17 was reasonable. Further, the officers' main concern was that appellant might not have given them his correct name. On finding his correct name, the police were able to determine that he was a juvenile and from that point the record reveals that he was treated as a juvenile. We find that the appellant's own action in expressly claiming that he was an adult, in deceiving the police and failing to inform them of his right name and age, affirmatively and expressly waived his rights to be treated as a juvenile during the taking of his second statement.

Further, based on this record, the appellant was given all rights provided to a juvenile by statute in connection with the taking of his third statement. The record demonstrates that appellant signed the third statement and voluntarily waived his rights in the presence of a magistrate as required by statute. The trial court did not err in overruling appellant's motion to suppress the third statement. Appellant's first and second points of error are overruled.

### LESSER INCLUDED OFFENSE

In his ninth point of error appellant argues the trial court erred in not submitting murder as a lesser included offense. The jury charge in our record shows that murder was submitted as a lesser included offense. Appellant's ninth point of error is overruled and the judgment of the trial court is affirmed.

ROSS A. SEARS, Justice (Assigned), concurring and dissenting.

I concur with the result reached by the majority, but respectfully dissent from the finding that appellant waived his right to be brought before a magistrate to be warned of his rights *before* any confession or statement can be used against him. The police are not at fault because appellant lied about his age. However, none of the cases cited in the opinion dealt with a statement taken *before* the accused received the juvenile warnings and rights from a magistrate. I believe the constitutional and legislative safeguards would be severely eroded if a juvenile can "knowingly" waive rights *before* a magistrate advises him of those rights. I have found no authority on this precise issue. Therefore, I would find the use of the second statement at trial was error. I would further find such error to be harmless because statement number three was taken *after* a magistrate advised appellant of his rights and *after* the magistrate determined that appellant understood those rights.