Opinion issued August 31, 2006














In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00412-CR
____________

ANTHONY DEMEL WILLIAMS, Appellant

V.

THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 351st District Court
Harris County, Texas
Trial Court Cause No. 991,643
 

 
 
MEMORANDUM OPINION
             A jury found appellant, Anthony Demel Williams, guilty of the offense of
murder


 and, after finding true the allegation in one enhancement paragraph that
appellant had a prior felony conviction, assessed his punishment at confinement for
sixty years. In two points of error, appellant contends that the evidence was factually
insufficient to support his conviction and that he was denied effective assistance of
counsel by his trial counsel’s failure to request a jury instruction on the lesser
included offense of manslaughter. 
          We affirm. 
Factual and Procedural BackgroundSheril Denise Jones, the complainant’s mother, testified that, on the morning
of June 19, 2004, she woke the complainant and then went outside on her balcony. 
Jones explained that the complainant, his common-law wife, and their infant son were
staying at Jones’s apartment due to financial problems. When she went outside, Jones
saw and spoke with appellant, who had lived in the apartment directly across from her
apartment for two or three months. Another neighbor then called Jones over to her
apartment, which was next door but had to be reached by a separate outside stairway. 
Before Jones had reached her neighbor’s apartment, the neighbor’s children came in
saying, “They’re fighting, they’re fighting!” Jones ran outside and saw the
complainant and appellant in the middle of the stairwell. The complainant had
appellant in a headlock, and appellant was holding the complainant around the waist. 
Jones told appellant and the complainant to stop fighting and the two eventually
broke apart. Jones testified that once the complainant and appellant stopped fighting,
they were both “pretty calm.” At that point, Jones and the complainant walked up the
stairs towards her apartment and appellant followed behind them. Jones and the
complainant then went back inside Jones’s apartment, but Jones did not lock the door; 
appellant went inside his own apartment.
          Once inside her apartment, Jones went to the bedroom with the complainant
and asked him about the fight. After this discussion, the complainant went into the
living room. Jones stayed in the bedroom with the complainant’s wife and baby. 
About ten minutes later, Jones heard a loud bump, “like somebody had busted in the
door.” She ran from the bedroom down a short hall into the living room, which she
thought took ten to twenty seconds. In the living room, Jones saw “[appellant] stab
[the complainant] twice in the side” as the complainant sat in a chair. The
complainant was “laid back and he wasn’t moving,” and he had blood coming from
his mouth. When the complainant grabbed the knife by its blade, appellant let it go. 
The complainant then tried to get up out of the chair, but fell to the floor. Jones
called for emergency assistance and the complainant’s wife attempted mouth-to-mouth resuscitation. When Jones went to the door to see if an ambulance had arrived,
she saw appellant at the open door of his own apartment and heard him say, “Fuck
that nigger,” before slamming his door.
          Regina Blount, the complainant’s common-law wife, testified that, as she
walked outside Jones’s apartment that morning, she saw the initial argument between
appellant and the complainant. She noted that appellant was “cussing [and] using
vulgar language” although there were two or three little girls at the door of his
apartment. Blount went inside Jones’s apartment to continue doing housework, but
returned outside when she “heard . . . rambling on the stairwell.” Once outside,
Blount saw the complainant and appellant “fist-fighting” and “wrestling” at the top
of the stairs. She helped break up the fight, pulled the complainant back, and brought
him into the apartment. Blount explained that she did not see any blood or any kind
of injury to appellant. Once Blount and the complainant were back inside, Blount
went back into the bedroom to iron clothes. Approximately twenty or thirty minutes
after the fight, Blount heard “a boom.” She went into the living room and saw Jones
“pull[ing] [appellant] off of [the complainant] and the complainant fall over in a chair
with a knife in his hands.” Blount grabbed appellant by his pants and pushed him out
of the door. 
          Houston Police Officer J. Johnston testified that, on that morning, he responded
to a request for additional police officers to help with crowd control at the scene. 
When homicide detectives arrived, they placed appellant in the back seat of
Johnston’s patrol car. Johnston explained that because of a “pretty hostile crowd”
he drove appellant, for his own safety, to a point one block away from the apartment
complex. At that point, appellant asked Johnston about the complainant and
“sounded concerned.” When Johnston told appellant that the complainant was dead,
appellant began crying “continuously, but not heavily.” Appellant admitted to
stabbing the complainant but explained to Johnston, “That man beat me like a dog
and I’m not going to retaliate?” Appellant further stated, “That dude jumped on me
and I ain’t [sic] meant to kill anybody.” Johnston saw that appellant had a swollen
lip and a swollen eye, but he did not recall seeing any bleeding.
          Ushonda Wooten, a resident of the same apartment complex, testified that she
and her two daughters had spent the night before the stabbing at appellant’s
apartment. In the morning, appellant went to a store, bought some beer, and started
drinking it at his apartment. Wooten then left appellant’s apartment and went down
the hall to visit with another friend that lived in the complex. When she returned to
appellant’s apartment approximately fifteen minutes later, she saw that appellant’s
face was swollen and that he was bleeding from his eye and his nose. Appellant told
Wooten that he had been in a fight with the complainant and that “he couldn’t take
that whooping.” Appellant told Wooten that he “[had come] in the house, got a knife,
and retaliated,” but stated that he didn’t really know if he had stabbed the
complainant or not. Appellant also told Wooten, “they said that I killed him.”
          Dr. Stephen Wilson, a Harris County assistant medical examiner, testified that
he performed an autopsy on the complainant. Wilson determined that the cause of the
complainant’s death was blood loss related to multiple sharp force injuries. The
complainant had a right chest stab wound that penetrated to a depth of more than two
inches and a left chest stab wound that penetrated to a depth of more than one and
one-half inches. The chest wounds perforated or penetrated both of the complainant’s 
lungs, causing collapse of the lungs and extensive bleeding. Wilson explained that
a person would have to intentionally drive a knife into someone’s chest, through the
muscle layer and chest wall, to cause the wounds that he saw on the complainant. He
also stated that either one of the chest wounds would have been fatal by itself. 
Wilson also identified another stab wound on the complainant that went entirely
through the musculature of his upper left arm and a small wound on the complainant’s
hand, which was consistent with a defensive injury. Factual Sufficiency
          In his first point of error, appellant argues that the evidence was factually
insufficient to support his conviction because the facts of this case were more
consistent with a reckless killing and did not prove beyond a reasonable doubt that
he intentionally killed the complainant. 
          In our review of the factual sufficiency of the evidence, we view all of the
evidence neutrally, not in the light most favorable to the verdict, and we will set aside
the verdict “only if the evidence is so weak that the verdict is clearly wrong and
manifestly unjust, or the contrary evidence is so strong that the standard of proof
beyond a reasonable doubt could not have been met.” Escamilla v. State, 143 S.W.3d
814, 817 (Tex. Crim. App. 2004). Although our analysis considers all the evidence
presented at trial, the trier of fact is the exclusive judge of the facts, the credibility of
the witnesses, and the weight to be given to their testimony. Zuniga v. State, 144
S.W.3d 477, 481–82 (Tex. Crim. App. 2004). Unless the available record clearly
reveals a different result is appropriate, an appellate court must defer to the jury’s
determination concerning what weight to give contradictory testimonial evidence
because this resolution often turns on an evaluation of the credibility and demeanor
of the witnesses, and the jurors were in attendance when the testimony was delivered. 
See Cain v. State, 958 S.W.2d 404, 408–09 (Tex. Crim. App. 1997).
          A person commits the offense of murder if he intentionally or knowingly
causes the death of an individual or intends to cause serious bodily injury and
commits an act clearly dangerous to human life that causes the death of an individual. 
Tex. Pen. Code Ann. § 19.02(b)(1), (2) (Vernon 2003). A person acts intentionally,
or with intent, when it is his conscious objective or desire to engage in the conduct
or cause the result. Id. § 6.03(b) (Vernon 2003). Intent and knowledge are fact
questions for the jury and are almost always proven through evidence of the
circumstances surrounding the offense. Childs v. State, 21 S.W.3d 631, 635 (Tex.
App.—Houston [14th Dist.] 2000, pet. ref’d). Intent may be inferred from
circumstantial events, such as acts, words, and the conduct of the defendant. Guevara
v. State, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004); Patrick v. State, 906 S.W.2d
481, 487 (Tex. Crim. App. 1995). It may also be inferred from the extent of the
injuries. Patrick, 906 S.W.2d at 487. Appellant notes that a knife is not a deadly
weapon per se. See Brown v. State, 651 S.W.2d 782, 783 n.2 (Tex. Crim. App. 1983). 
However, intent may be judged from the manner a defendant uses a knife and from
any other circumstances which logically suggest intent or another mental state. See
Manrique v. State, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999). 
          Appellant asserts that he specifically maintained that he did not intend to kill
the complainant and did not mean for him to die from his injuries. Appellant notes
that Officer Johnston testified that appellant’s concern about the complainant seemed
genuine and that appellant started crying when the officers told him that the
complainant had died. Appellant also notes that Wooten testified that appellant
meant only to return the “whooping” that the complainant had given him and that he
took a kitchen knife with him as an “equalizer” to accomplish his retaliation. 
Appellant asserts that he did not plan to catch the complainant alone without
witnesses. Also, he did not try to conceal his identity or his purpose, as he might
have done if he had intended to kill the complainant. Moreover, he did not continue
to stab the complainant at the point when he could have continued. Appellant
acknowledges that the act of stabbing someone with a knife would ordinarily be
sufficient proof of an act that was objectively “clearly dangerous to human life.” He
contends, however, that the evidence in his case did not prove that to him,
“subjectively,” his actions were clearly dangerous to the complainant’s life.
          Here, however, there was ample evidence to prove that appellant intentionally
or knowingly caused the death of the complainant or that appellant intended to cause
serious bodily injury to the complainant and committed an act clearly dangerous to
human life that caused the death of the complainant. Appellant admitted to police
officers that he had retaliated against the complainant because “that man beat me like
a dog.” The physical evidence shows that appellant stabbed the complainant three
times, once through the arm and twice in the chest, and at least two of the wounds
were inflicted while the complainant was seated in a chair. With respect to the chest
wounds, the knife went through a layer of muscle, the chest wall, and the intercostal
spaces between the ribs. The wounds penetrated to a depth of more than two inches
and more than one and one-half of an inch, causing the complainant’s lungs to
collapse and extensive hemorrhaging. Dr. Wilson explained that appellant had to
have used a considerable amount of force to cause the chest injuries to the
complainant and that either chest wound could have caused death by itself. He also
stated that appellant had to have intentionally driven the knife into the complainant
to cause the injuries. Moreover, Jones testified that appellant stopped stabbing the
complainant only after the complainant reached up and grabbed the knife by the
blade. 
           Although there may have been some conflicting evidence from which the jury
could have made a determination that appellant did not have the requisite intent, those
conflicts were well within the province of the jury to resolve. A decision is not
manifestly unjust merely because the jury resolved conflicting views of the evidence
in favor of the State. Cain, 958 S.W.2d at 410.
          Viewing the evidence in a neutral light, favoring neither the State nor
appellant, and with appropriate deference to the jury’s credibility determinations, we 
conclude that the evidence supporting the verdict is not too weak to support the jury’s
finding of guilt beyond a reasonable doubt and that the weight of the evidence
contrary to the verdict is not so strong that the State could not have met its burden of
proof. See Jackson v. State, 115 S.W.3d 326, 329 (Tex. App.—Dallas 2004), aff’d,
160 S.W.3d 568 (Tex. Crim. App. 2005) (holding evidence factually sufficient to
support conviction for murder where defendant hit victim in head with hammer and
testified he did not intend to kill and only “tried to hurt him like he tried to hurt me.”)
Accordingly, we hold that the evidence is factually sufficient to support appellant’s
conviction for the offense of murder. 
          We overrule appellant’s first point of error.
Ineffective Assistance
          In his second point of error, appellant argues that he was denied the effective
assistance of counsel because his trial counsel did not request an instruction on the
lesser included offense of manslaughter. Appellant asserts that his trial counsel’s
error resulted in a misstatement of the law to the jury and that the absence of the
option to convict him of manslaughter created the substantial risk that his jury
returned an improper conviction for murder. 
          The standard of review for evaluating claims of ineffective assistance of
counsel is set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052,
2064 (1984). Strickland requires a two-step analysis whereby appellant must show
both that (1) counsel’s performance fell below an objective standard of
reasonableness, and (2) but for counsel’s unprofessional error, there is a reasonable
probability that the result of the proceedings would have been different. Strickland,
466 U.S. at 687, 104 S. Ct. at 2064; Vasquez v. State, 830 S.W.2d 948, 949 (Tex.
Crim. App. 1992). Strickland defines reasonable probability as a “probability
sufficient to undermine confidence in the outcome.” 466 U.S. at 694, 104 S. Ct. at
2068. It is appellant’s burden to prove ineffective assistance and he must overcome
the strong presumption that, under the circumstances, the challenged action might be
considered sound trial strategy. Gamble v. State, 916 S.W.2d 92, 93 (Tex.
App.—Houston [1st Dist.] 1996, no pet.). Texas law permits a finding of ineffective
assistance of counsel on direct appeal when the record confirms that no reasonable
trial strategy could have justified counsel’s acts or omissions. See Vasquez, 830
S.W.2d at 950–51.
          Here, because appellant did not file a motion for new trial, there is no evidence
in the record as to why appellant’s trial counsel did not request a jury instruction on
the lesser-included offense of manslaughter. When the record is silent regarding trial
counsel’s reasons for his conduct, we will defer to counsel’s decisions if there “is at
least the possibility that the conduct could have been legitimate trial strategy.” Ortiz
v. State, 93 S.W.3d 79, 88–89 (Tex. Crim. App. 2002). The Court of Criminal
Appeals has emphasized that it “will commonly assume a strategic motivation if any
can possibly be imagined” and “will not conclude the challenged conduct constituted
deficient performance unless the conduct was so outrageous that no competent
attorney would have engaged in it.” Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim.
App. 2001). This Court has stated that it can be a “reasonable trial strategy to decide
not to request a charge on a lesser included offense.” Davis v. State, 930 S.W.2d 765,
768 (Tex. App.—Houston [1st Dist.] 1996, pet. ref’d.). Specifically, a majority of
this Court has previously concluded that a defense lawyer did not act deficiently in
not requesting an instruction on the lesser included offense of manslaughter when he
could have been “pursuing an all-or-nothing trial strategy.” Shanklin v. State, 190
S.W.3d 154, 161 (Tex. App.—Houston [1st Dist.] 2005, pet. granted); see also Ex
Parte White, 160 S.W.3d 46, 55 (Tex. Crim. App. 2004) (concluding “counsel was
not ineffective for failing to request an instruction [on the lesser-included offense of
manslaughter] that the [defendant] did not want.”).
          Accordingly, following the precedent of Shanklin, we cannot conclude that
appellant’s trial counsel was ineffective in failing to request an instruction on the
lesser included offense of manslaughter. We overrule appellant’s second point of error.
 
 
 
Conclusion
          We affirm the judgment of the trial court.
 
 
                                                             Terry Jennings
                                                             Justice
 
Panel consists of Chief Justice Radack and Justices Jennings and Alcala.
 
Do not publish. Tex. R. App. P. 47.2(b).