Affirmed and Memorandum Opinion filed August 28, 2008








Affirmed and Memorandum Opinion filed August 28, 2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00366-CR

____________

 

DONTAE TERRELL MOORE, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 177th
District Court

Harris County, Texas

Trial Court Cause No. 1061081

 



 

M E M O R A N D U M   O P I N I O N

Appellant Dontae Terrell Moore appeals his conviction for
capital murder, claiming (1) factual insufficiency of the evidence, (2) the
trial court erred in allegedly failing to offer findings of fact as to the
voluntariness of appellant=s statement to police, (3) harmful error
in that the trial court failed to give sua sponte instructions in the
jury charge regarding the voluntariness of appellant=s statement, (4)
the State failed to prove by a preponderance of the evidence that appellant
waived his Miranda rights, and (5) his statement was made involuntarily
by virtue of law enforcement officers overbearing his will.  We affirm.








I.  Factual and Procedural Background

Appellant and an acquaintance, Warren Payne, met
complainant Jonathan Finkelman at a park for the purpose of purchasing
narcotics.  Some of Payne=s friends had arranged to rob Finkelman in
retribution for an earlier narcotics transaction in which Finkelman allegedly
shorted Payne=s friends a pill.  Appellant and Payne arrived at the
park with a mutual friend, Jeffery Lopez.  They were aware of a plan to rob
Finkelman.  Appellant and Payne got into Finkelman=s vehicle and
negotiated a price for the narcotics.  Different accounts of the events that
followed emerged at trial.

Payne testified that when Finkelman asked for the money,
appellant brandished a silver gun.  Appellant pointed the gun at Finkelman=s head and
demanded the narcotics.  Payne recalled seeing Finkelman and appellant struggle
for control of the gun and how the gun discharged once, but this shot missed
Finkelman.  Payne backed out of the vehicle and heard two to three more
gunshots.  He saw Finkelman=s body Ajerk@ forward, and
Payne fled the vehicle.  Payne heard a fourth shot fired as he ran from the
vehicle, and Payne realized that he, too, had been shot.

Finkelman=s friend, Mark Taormina, was also in the
vehicle during the events.  Taormina testified that appellant aimed the gun in
the vicinity of Finkelman=s head and demanded the drugs.  According
to Taormina, Finkelman and appellant struggled for control of the gun.  The gun
discharged once in the struggle, but that shot missed Finkelman.  Taormina
heard two to three more shots in quick succession, and one of these shots hit
Finkelman.  Taormina fled from the vehicle, but he saw appellant exit the
vehicle and open Finkelman=s driver-side door.  Taormina saw
appellant rummage through Finkelman=s clothing. 
According to Taormina, appellant saw Taormina, pointed a gun at him, and told
him to keep walking.  Taormina recalled hearing several more shots.








Payne=s friend, Matthew Prall, sat with some
friends in stadium bleachers at the park in anticipation of watching the
robbery or a fight.  Prall testified that Payne and appellant were in Finkelman=s vehicle for five
to ten minutes when Prall heard a gunshot from within the car.  Prall described
seeing Payne and Taormina flee the vehicle.  Prall testified that appellant
pointed a gun at Taormina and Taormina begged appellant not to shoot him. 
Prall heard three to four more gunshots outside of the vehicle and saw
appellant shoot at Payne.

Appellant testified that after entering Finkelman=s vehicle, he and
Finkelman negotiated a price for the narcotics.  He did not have enough money
to complete the transaction.  Appellant left Finkelman=s vehicle, and he
returned with a gun he had borrowed from Lopez.  Appellant pointed the gun at
Finkelman=s head, intending to scare Finkelman.  Appellant
claimed that Finkelman grabbed the gun and the two struggled for the gun. 
Appellant admitted his finger was pressed against the gun=s trigger, and the
gun discharged in the struggle.  Appellant testified that this was the only
shot fired inside the vehicle.  Appellant saw Payne and Taormina run from the
vehicle.  Appellant also fled the vehicle.  Appellant testified that as he ran
he heard gunshots, and he returned fire, emptying the gun.  Appellant fled the
scene.

Autopsy reports indicate Finkelman died of a contact
gunshot wound to his head with the weapon placed against his skin.  Finkelman=s wallet was never
found.  Appellant was arrested and charged with capital murder for causing
Finkelman=s death during a robbery. 

A police detective conducted two videotaped interviews with
the appellant.  In the first video, appellant admitted to using narcotics twice
in the hours preceding the interview.  The detective terminated this interview
and conducted the second videotaped interview twenty-four hours later after
appellant had been in police custody and free from access to narcotics or
alcohol.  In each interview, appellant denied recollection of the events.  In
his testimony at trial, he admitted to lying to the detective in both
interviews in an effort to cover up his role in the crime.








The jury found appellant guilty as charged, and the trial
court assessed punishment as life in prison without the possibility of parole.

II.  Issues and Analysis

A.      Is the
evidence factually sufficient to support appellant=s conviction?

In his fifth issue, appellant challenges the factual
sufficiency of the evidence to prove appellant had specific intent to kill Finkelman.[1] 
When evaluating a
challenge to the factual sufficiency of the evidence, we view all the evidence
in a neutral light and inquire whether we are able to say, with some objective
basis in the record, that a conviction is Aclearly wrong@ or Amanifestly unjust@ because the great weight and
preponderance of the evidence contradicts the jury=s verdict.  Watson v. State,
204 S.W.3d 404, 414B17 (Tex. Crim. App. 2006).  It is not enough that this court
harbor a subjective level of reasonable doubt to overturn a conviction that is
founded on legally sufficient evidence, and this court cannot declare that a
conflict in the evidence justifies a new trial simply because it disagrees with
the jury=s resolution of that conflict.  Id.
at 417.  If this court determines the evidence is factually insufficient, it
must explain in exactly what way it perceives the conflicting evidence greatly
to preponderate against conviction.  Id. at 414B17.  Our evaluation should not
intrude upon the fact finder=s role as the sole judge of the weight and credibility given
to any witness=s testimony.  See Fuentes v. State, 991
S.W.2d 267, 271 (Tex. Crim. App. 1999).  In conducting a factual‑sufficiency review, we
discuss the evidence appellant claims is most important in allegedly
undermining the jury=s verdict.  See Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).








A person commits the offense of capital murder if he
intentionally or knowingly causes the death of an individual while in the
course of committing a felony.  Tex.
Penal Code Ann. '' 19.02(b), 19.03(a)(2) (Vernon 2003 &
Supp. 2007).  The indictment in this case charged appellant with intentionally
causing the death of the complainant by shooting the complainant with a
firearm, a deadly weapon, while in the course of committing or attempting to
commit a robbery.  A robbery is a second-degree felony.  Tex. Penal Code Ann. ' 29.02(b) (Vernon
2003).

Intent is a fact question for the jury and is almost always
proven through evidence of the circumstances surrounding the crime.  See
Childs v. State, 21 S.W.3d 631, 635 (Tex. App.CHouston [14th
Dist.] 2000, pet. ref=d).  Intent may be inferred from words and
conduct of the accused.  Id.  The jury may infer the intent to kill from
the use of a deadly weapon unless it would not be reasonable to infer that
death or serious bodily injury could result from the use of the weapon.  See
Staley v. State, 887 S.W.2d 885, 889 (Tex. Crim. App. 1994); Ross v.
State, 861 S.W.2d 870, 873 (Tex. Crim. App. 1992); Childs, 21 S.W.3d
at 635.  Furthermore, when a deadly weapon is fired at close range and death
results, the law presumes an intent to kill.  Childs, 21 S.W.3d at 635. 









The State presented testimony from Payne and Taormina, both
of whom testified that appellant pointed the gun at Finkelman=s head or in the
general vicinity of Finkelman=s head when appellant demanded the
narcotics.  Appellant, himself, testified that he held the gun against Finkelman=s temple. 
However, appellant testified that in holding the gun to Finkelman=s head, he
intended only to scare Finkelman and that the gun discharged in the ensuing
scuffle.  Autopsy reports indicate that Finkelman suffered a gunshot wound to
his head resulting from a gun being discharged when placed against Finkelman=s skin.  Intent to
kill may be presumed from the evidence because Finkelman=s death occurred
from the weapon fired at close range.  See Childs, 21 S.W.3d at 635. 
Furthermore, specific intent to kill may be inferred from appellant=s use of the gun,
a deadly weapon, unless it is reasonably apparent from the manner of its use
that death or bodily injury could not result.  See Ross, 861 S.W.2d at
873; Godsey v. State, 719 S.W.2d 578, 580B81 (Tex. Crim.
App. 1986).  Therefore, appellant=s admitted use of
the gun, by placing it against Finkelman=s head, and
evidence indicating Finkelman died of gunshot wounds at close range are
sufficient to demonstrate specific intent to kill.  See Childs, 21
S.W.3d at 635; Ross, 861 S.W.2d at 873; Godsey, 719 S.W.2d at 580B81.

Viewing
the evidence in a neutral light, we cannot say with some objective basis in the
record that appellant=s convictions are clearly wrong or manifestly unjust because
the great weight and preponderance of the evidence contradicts the jury=s verdict.  See Watson,
204 S.W.3d at 417; Martin v. State, 246 S.W.3d 246, 264 (Tex. App.CHouston [14th Dist.] 2007, no pet.). 
In light of the testimony and autopsy evidence, we hold that the evidence is
factually sufficient to prove specific intent for appellant=s conviction of capital murder.  Accordingly,
appellant=s fifth issue is overruled.

B.      Did the trial court err in
failing to make findings of fact as to the voluntariness of appellant=s videotaped statements to police
investigators?








In his first issue, appellant contends the trial court
erred in failing to make findings of fact regarding the voluntariness of
appellant=s videotaped statements to police investigators.  When
the voluntariness of a statement is challenged, the trial court is obligated
under Article 38.22, section 6 of the Texas Code of Criminal Procedure to make
written fact findings and conclusions of law as to whether the challenged
statement was made voluntarily.  See Tex.
Code Crim. Proc. Ann. art. 38.22, ' 6 (Vernon 2005); Urias
v. State, 155 S.W.3d 141, 142 (Tex. Crim. App. 2004).  Because the record
contained no findings, on February 7, 2008, this court abated the appeal for
the trial court to supply written findings of fact and conclusions of law on
the voluntariness of appellant=s videotaped statements.  Appellant=s first issue was
rendered moot on February 19, 2008, when the trial court filed the appropriate
findings and conclusions in which the trial court determined appellant=s videotaped
statements to investigators were voluntary.  See Rocha v. State, 16
S.W.3d 1, 10 (Tex. Crim. App. 2000); Allen v. State, 795 S.W.2d 15, 16
(Tex. App.CHouston [14th Dist.] 1990, no pet.).  A trial court
should file its findings of fact and conclusions of law as soon as possible
after admission of the confession irrespective of whether the accused objects
to the trial court=s failure to follow Texas Code of Criminal
Procedure Article 38.22, section 6.  See Allen, 795 S.W.2d at 16.  However,
the fact that the trial court did not file its findings and conclusions until
after abatement does not constitute reversible error.  See id.  Therefore,
appellant=s first issue is overruled as moot.

C.      Did the trial court err in
failing to sua sponte instruct the jury under Articles 38.22 and 38.23
of the Texas Code of Criminal Procedure as to the voluntariness of appellant=s statements?

In his second issue, appellant claims egregious harm
because the trial court did not sua sponte instruct the jury as to the
voluntariness of appellant=s videotaped statements under Articles
38.22, section 6, and 38.23 of the Texas Code of Criminal Procedure.  Appellant
points to evidence that he smoked marijuana laced with the contraband substance
known as APCP@ twice in the hours preceding his arrest
and first interview as affecting the voluntariness of his videotaped
statements.  Appellant complains that as a result of the trial court=s error in failing
to instruct the jury as to the voluntariness of his statements, his trial
testimony was rendered less credible because it conflicted with his two prior
statements to the police investigator.

A trial judge has the absolute duty to sua sponte to
prepare a jury charge that accurately sets out the law applicable to the case. 
Oursbourn v. State, ___ S.W.3d ___, ___, No. PD 1687-06, 2008 WL
2261744, at *11 (Tex. Crim. App. June 4, 2008); see Tex. Code Crim. Proc. Ann. art. 36.14
(Vernon 2007).  When statutes such as Articles 38.22 and 38.23 require an
instruction under certain circumstances, that instruction is Alaw applicable to
the case,@ and the trial court must instruct the jury of what is
required under the statute.  Oursbourn, 2008 WL 2261744, at *11B12.  








1.       Texas
Code of Criminal Procedure Article 38.23

Article 38.23 provides if evidence raises a fact issue as
to whether the admitted evidence, such as the videotaped statements in this
case, was obtained in violation of the United States Constitution or Texas
laws, then Athe jury shall be instructed that if it believes, or
has a reasonable doubt, that the evidence was obtained in violation of the
provisions of this Article, then and in such event, the jury shall disregard
any such evidence so obtained.@  Tex.
Code Crim. Proc. Ann. art. 38.23(a) (Vernon 2005); see Mendoza v.
State, 88 S.W.3d 236, 239 (Tex. Crim. App. 2002).  Article 38.23 is the Alaw applicable@ in a case in
which a specific, disputed factual issue is raised concerning the
constitutional voluntariness in the making of a defendant=s statement.  See
Oursbourn, 2008 WL 2261744, at *12.  However, evidence does not raise a
constitutional voluntariness issue unless the evidence involves police coercion
or other official over-reaching.  See id. at *13; Perry v. State,
158 S.W.3d 438, 446 (Tex. Crim. App. 2004).  Therefore, a jury instruction
under Article 38.23 is not required unless the evidence raises a factual
dispute as to whether the evidence was illegally obtained.  See Oursbourn,
2008 WL 2261744, at *12; see Garza v. State, 126 S.W.3d 79, 85
(Tex. Crim. App. 2004).

In this case, evidence did not raise a specific, disputed
factual issue under Article 38.23 as to as to whether the investigator
illegally obtained appellant=s statements.  See Oursbourn , 2008
WL 2261744, at *13; Perry, 158 S.W.3d at 446; Williams v. State,
No. 01-04-00639-CR, 2005 WL 1415353, at *3 (Tex. App.CHouston [1st
Dist.] June 16, 2005, pet. ref=d) (mem. op., not designated for
publication).  Though appellant points to evidence that he smoked marijuana
laced with PCP before appellant first interview with detectives, this evidence
does not raise a factual dispute as to whether appellant=s statement was
illegally obtained by virtue of police misconduct.  Oursbourn, 2008 WL
2261744, at *13; Williams, 2005 WL 1415353, at *3.








Because the evidence does not raise a factual dispute as to
whether appellant=s statements were illegally obtained, the
evidence did not warrant an instruction under Article 38.23.  See Oursbourn,
2008 WL 2261744, at *13; Garza, 126 S.W.3d at 85; Butler, 872
S.W.2d 227, 236 (Tex. Crim. App. 1994); Perry, 158 S.W.3d at 443. 
Therefore, the trial court did not err in failing to sua sponte submit
jury instructions under Article 38.23.  See Oursbourn, 2008 WL 2261744,
at *13.

2.       Texas
Code of Criminal Procedure Article 38.22

Article 38.22, section 6 of the Code of Criminal Procedure
governs the admissibility of an accused=s custodial and
non-custodial statements, providing that only voluntary statements may be
admitted.  Tex. Code Crim. Proc. Ann.
art. 38.22, ' 6 (Vernon 2005); see Oursbourn, 2008 WL
2261744, at *6.  Under Article 38.22, section 6, once the voluntariness of a
statement is raised, the trial judge is required to (1) make an independent
determination that the statement was made under voluntary conditions, and (2)
instruct the jurors that they shall not consider any statement for any purpose
unless they believe beyond a reasonable doubt that the statement was made
voluntarily.  Oursbourn, 2008 WL 2261744, at *12; see Tex. Code Crim. Proc. Ann. art. 38.22, ' 6.  








Claims of youth, intoxication, and mental retardation, by
themselves, are rarely sufficient to render a statement inadmissible; however,
a jury, armed with a proper jury instruction, may consider these factors.  See
Oursbourn, 2008 WL 2261744, at *7.  Entitlement to an
instruction pursuant to Article 38.22, section 6 does not require a factual
dispute, and similarly, a defendant need not request the jury instruction.  See
id. at *9.  Even if evidence is undisputed that a defendant was Ahigh@ on narcotics at
the time he gave his statement, as in this case, Aif a reasonable
jury could find that the facts, disputed or undisputed, rendered him unable to
make a voluntary statement, he is entitled to a general voluntariness
instruction when he has raised a question of the voluntariness of his
statement.@  Id.  In this case, evidence as to
voluntariness, as brought to the trial court=s attention in
appellant=s motion-to-suppress hearing, raised a general
voluntariness question under Article 38.22, section 6.[2] 
See id.  At trial, appellant claimed that he was under the influence of
narcotics in the first interview even though the investigator did not observe
signs of intoxication in either interview.[3] 
Article 38.22, section 6 is the Alaw applicable@ to this case.  See
id.  The issue of voluntariness should have been submitted to the jury
under Article 38.22, section 6 because the question as to general voluntariness
was raised to the trial court and a reasonable jury could have concluded based
on the evidence that the statements were not voluntary.  See id. at *13.


3.       Harm
Analysis








When, as in this case, appellant fails to request an
Article 38.22 instruction, or fails to object to the lack of one, a reviewing
court must consider the trial court=s failure to
instruct the jury pursuant to this article as a jury-charge error.  See id.;
Madden v. State, 242 S.W.3d 504, 513 (Tex. Crim. App. 2007).  Under this
standard, jury-charge error in the absence of an objection or request results
in reversal only when egregious harm ensued.  Pickens v. State,
165 S.W.3d 675, 680 (Tex. Crim. App. 2005).  Egregious harm occurs when
appellant has not received a fair and impartial trial.  See Almanza v. State,
686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh=g).  Appellant
must have suffered actual, rather than merely theoretical harm from the
jury-instruction error.  See Almanza, 686 S.W.2d at 174.  We consider
whether an appellant has suffered egregious harm stemming from a
non-objected-to instruction on a case-by-case basis in light of (1) the entire
jury charge, (2) the state of the evidence, including contested issues, (3)
arguments of counsel, and (4) any other relevant information.  Hutch v.
State, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).  Errors that result in
egregious harm affect Athe very basis of the case,@ Adeprive a
defendant of a valuable right,@ or Avitally affect a
defensive theory.@  See id.

Appellant complains that there was Ano mechanism for
the jury to disregard appellant=s video statement@ if the jury were
to believe the statements were involuntary.  When considering the record as a
whole, particularly in light of the autopsy reports that Finkelman died of
contact gunshot wounds and appellant=s own trial
testimony that corroborated that of Payne=s and Taormina=s in that he
pointed a gun at Finkelman=s head and that the gun discharged in a
struggle for control of the gun, appellant has not suffered actual egregious
harm.  See Gomez v. State, No. 07-07-0051-CR, 2008 WL 2917592, at *5
(Tex. App.CAmarillo July 30, 2008, no pet. h.) (mem. op., not
designated for publication).  We conclude that the trial court=s failure to
include an instruction as to voluntariness did not  impair appellant=s right to have a
fair and impartial trial.  See id.  Therefore, we overrule appellant=s second issue.

D.      Did the State prove
appellant=s waiver of his Miranda
rights in making the statements and were such statements obtained by law
enforcement officers overbearing his will?

In his third and fourth issues, appellant complains that
(1) the State failed to prove that he knowingly, voluntarily, and intelligently
waived his Miranda rights in making the videotaped statements; and (2)
under a totality of circumstances, law enforcement officials obtained appellant=s statements by
overbearing his will so as to render the statements involuntary.  Appellant
points to evidence of his educational background in reaching only the tenth
grade, his physical appearance and demeanor in the video, his Aacquiescence to
police suggestions that he waive his rights,@ and appellant=s admission of
narcotics ingestion as evidence weighing against a finding that appellant=s decision to
waive his rights and make a statement was voluntary and the product of
unconstrained choice.








Appellant filed a pre-trial motion to suppress the two
videotaped statements.  The trial court denied this motion.  A motion to
suppress is nothing more than a specialized objection to the admissibility of
evidence.  See Galitz v. State, 617 S.W.2d 949, 952 n.10 (Tex. Crim.
App. 1981).  When a pre-trial motion to suppress evidence is overruled, as in
this case, the defendant need not subsequently object at trial to the same
evidence to preserve error on appeal.  See Moraguez v. State, 701 S.W.2d
902, 904 (Tex. Crim. App. 1986).  However, at trial appellant affirmatively
stated that he had Ano objection@ to the admission
of the two videotaped statements.  By doing so, appellant waived any error,
despite the pre-trial ruling.   See Norris v. State, 902 S.W.2d 428, 439
(Tex. Crim. App. 1995); Jones v. State, 833 S.W.2d 118, 126 (Tex. Crim.
App. 1992); Moody v. State, 827 S.W.2d 875, 889 (Tex. Crim. App.
1992); Gearing v. State, 685 S.W.2d 326, 329B30 (Tex. Crim.
App. 1985); Hardin v. State, 951 S.W.2d 208, 210 (Tex. App.CHouston [14th
Dist.] 1997, no pet.).  Thus, by affirmatively stating he had no objection at
trial, appellant waived his complaint to the inadmissibility of the challenged
evidence.  See Moody, 827 S.W.2d at 889.  Accordingly, we overrule
appellant=s third and fourth issues.

Having overruled appellant=s five issues, we
affirm the trial court=s judgment.

 

 

 

/s/      Kem Thompson Frost

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed August 28, 2008.

Panel consists of
Justices Frost, Seymore, and Guzman.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  Because a factual-sufficiency review begins with the presumption that
the evidence supporting the jury=s verdict is legally sufficient, and because appellant
challenges only the factual sufficiency of the evidence, appellant effectively
concedes the evidence is legally sufficient to sustain the conviction.  See
Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997); Clewis
v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996).





[2]  The trial court denied appellant=s motion to suppress the statements.  As discussed
above, the trial court filed its findings of fact after this court abated the
appeal for the appropriate findings.





[3]  On appeal, appellant does not distinguish whether
the second interview is affected by his drug use twenty-four hours before.