Affirmed and Memorandum Opinion filed April 27, 2010.

 

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-08-01019-CR

___________________

 

Adrien Lee Caldwell, Appellant

 

V.

 

The State of Texas, Appellee



 



 

On
Appeal from the 230th District Court

Harris County,
Texas



Trial Court Cause No. 1176578

 



 

 

MEMORANDUM OPINION

            Appellant Adrien Lee Caldwell was convicted of capital murder
and sentenced to life imprisonment.  In five issues, appellant argues that his
right to a unanimous jury verdict was violated and that the evidence is legally
and factually insufficient to support his conviction.  We affirm.  

 

 

 

                                                                                        
I.           
Factual
and Procedural Background

Members of the Houston
Fire Department responded to a fire at the complainant’s apartment on the
morning of May 25, 2006.  A team of firefighters entered the apartment and
began searching for survivors.  As the smoke cleared after the fire was
extinguished, one of the firefighters noticed the complainant’s naked and badly
burned body lying on top of a mattress that was nearly consumed by the fire. 
Shortly after the body was discovered, police investigators arrived at the
scene and discovered blood around the complainant’s head and the remains of a
pillow matted in the complainant’s hair.  A bullet was also recovered on the
bedroom floor directly underneath where the complainant’s head was resting on
the bed.  

When firefighters
arrived, the complainant’s front door was unlocked and showed no signs of
forced entry.  However, a window panel near the front door was unlocked, and
one of the windows was broken and missing its screen.  The broken window was
close enough to the front door to allow a person to reach through the window
and unlock and open the front door.  An open knife was discovered on the floor
beneath the broken window, and the complainant’s father and former live-in
boyfriend testified that they had never seen the knife in the apartment.  The
police were unable to recover any fingerprint or DNA evidence from the knife,
front door, or windows.  Arson investigators found strips of paper doused with
ethanol in the complainant’s bedroom, but did not find ethanol elsewhere in the
apartment.  The investigators concluded that the fire had been intentionally
set and originated on the complainant’s bed near her abdominal region.  

The complainant’s
ex-boyfriend testified that he and the complainant dated for just over two
years and lived together in the complainant’s apartment until March 2006, when
they broke up and the ex-boyfriend moved to Florida.  The complainant then
lived alone until her death.  She was described as a shy girl who did not
socialize often, and who was seeing a psychologist and taking antidepressants
because she was having a difficult time getting over the breakup.  Her parents spoke
with her over the phone nearly every day because they were worried for her
safety and emotional health.  The ex-boyfriend stayed in contact with the
complainant after moving to Florida, and testified that the complainant wanted
to re-start their relationship.  The complainant’s parents and ex-boyfriend
stated that the complainant was not dating anyone at the time of her death. 
When asked whether the complainant wore clothing when she slept, the
ex-boyfriend stated that she never slept naked.  The complainant’s parents did
not know of any relationship between the complainant and appellant, and the
police found no link between the two in the complainant’s cell-phone, credit
card, computer, or e-mail records.  

            Dr. Steven Wilson, the medical examiner who performed the
autopsy of the complainant’s body, testified that he found a gunshot entrance
wound on the back of the complainant’s neck and an accompanying exit wound on
her forehead.  He concluded that the complainant had been shot in the back of
the neck from approximately one-and-a-half inches away, and that this injury
caused the complainant’s death.  The absence of any evidence of smoke
inhalation in the complainant’s nose or lungs lead Wilson to determine that the
complainant had been killed before her body was set on fire.  Wilson testified
that the complainant’s body was nearly completely burned and charred and that
the area surrounding the complainant’s genitals had suffered some of the most
severe burns.  The condition of the complainant’s body led Wilson to believe a
sexual assault may have occurred, so he collected vaginal and rectal smear
samples from the body.  After testing, the vaginal samples showed the presence
of sperm and semen, and the rectal sample showed the presence of semen.  Wilson
testified that the maximum survival time for sperm in the vagina or rectum is
typically between two to four days in live individuals and forty-four to
forty-eight hours in deceased individuals.  He also stated that “sperm can
degrade much more rapidly in the heat.”  The severity of the complainant’s
genital burns made it difficult for Wilson to find any external evidence of a
sexual assault, but he did discover minor trauma and fresh bruising along the
inner surface of the complainant’s vaginal opening and along her cervix. 
Wilson stated this internal trauma could have been caused by “some sort of
object or object inserted into the vagina” and that the bruises could have been
present for a “couple of hours, maybe up to a couple of days” before the
complainant’s death.  

The police
investigated the complainant’s death for over a year before identifying
appellant as a suspect.  Police then returned to the area around the
complainant’s apartment and showed several individuals a photo array containing
appellant’s picture.  Two of the apartment complex’s employees remembered
seeing appellant at the complex occasionally before the complainant’s death.  One
of the employees recalled seeing appellant standing about two doors down from the
complainant’s unit and near her windows on one occasion.  There was no record
of appellant ever renting or occupying a unit at the complex.  An employee of
an auto-repair shop directly behind the complainant’s apartment also recalled
seeing appellant in the area a month or two before the incident.  Police
learned that appellant began training for a new job at a restaurant located one
or two blocks from the complainant’s apartment a few days prior to the offense. 
Appellant did not complete any training shifts after May 23, 2006—two days
prior to the complainant’s death—and he never returned to pick up his paycheck. 
No one recalled seeing appellant near the complainant’s apartment after her
death.  

            A sample of appellant’s DNA was sent to an independent
forensic analysis company, where it was compared to the male DNA collected from
the sperm and semen recovered from the complainant’s genitals.  The results showed
that appellant was a “major contributor” to the male DNA contained in the sperm
collected from the vaginal sample.  The statistical likelihood of finding
another random individual within the African-American population[1] matching the DNA collected from the sample was one in
606.8 quadrillion.  Appellant’s DNA was also consistent with the male DNA
collected from the rectal swab taken from the complainant at all seventeen
genetic markers that were tested.  

            After hearing all of the evidence, the jury convicted
appellant of capital murder.  The trial court then sentenced appellant to life
imprisonment in the Institutional Division of the Texas Department of Criminal
Justice.  Appellant raises five issues on appeal.  In his first issue, he
argues that the trial court’s refusal to instruct the jury that their verdict
must be unanimous violated his constitutional right to a unanimous jury
verdict.  In his four remaining issues, appellant contends that the evidence is
legally and factually insufficient to support his conviction for capital
murder.  

                                                                                                                                            
II.           
Jury Unanimity 

In his first issue, appellant argues that his right
to a unanimous jury verdict was violated.  He alleges that the jury should have
been instructed that it must be unanimous in deciding which one of the two
disjunctively submitted “offenses” appellant committed.  The jury charge
provides, in relevant part, as follows: 

Now, if you find from the evidence
beyond a reasonable doubt that on or about the 25th day of May, 2006, in Harris
County, Texas, the defendant, Adrien Lee Caldwell, did then and there
unlawfully, while in the course of committing or attempting to commit the
aggravated sexual assault of [the complainant], intentionally cause the death
of [the complainant] by shooting [the complainant] with a deadly weapon, namely
a firearm; or

If you find from the evidence
beyond a reasonable doubt that on or about the 25th day of May, 2006, in Harris
County, Texas, the defendant, Adrien Lee Caldwell, did then and there
unlawfully, while in the course of committing or attempting to commit the
burglary of a habitation owned by [the complainant], intentionally cause the
death of [the complainant] by shooting [the complainant] with a deadly weapon,
namely a firearm, then you will find the defendant guilty of capital murder, as
charged in the indictment. 

Appellant contends this
charge was improper because some jurors may have found that he committed murder
during the commission of aggravated sexual assault while others found that he
committed murder during the commission of a burglary.  

The Texas Constitution requires a unanimous verdict
in felony cases.  See Tex. Const.
art. V, § 13; see also Tex.
Code Crim. Proc. Ann. art. 36.29(a) (Vernon 2006 & Supp. 2009).  This
right is not violated when the jury is disjunctively instructed on alternate
means or theories of committing the same offense, even where the indictment
alleges differing methods of committing the offense in the conjunctive.  See
Martinez v. State, 129 S.W.3d 101, 103 (Tex. Crim. App. 2004); Kitchens
v. State, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991).  With respect to
homicide offenses, different legal theories involving the same victim are
simply alternate methods of committing the same offense.  Huffman v. State,
267 S.W.3d 902, 905 (Tex. Crim. App. 2008).  The alternate methods of
committing capital murder include the intentional commission of murder in the
course of committing or attempting to commit burglary or aggravated sexual
assault.  See Tex. Penal Code
Ann. § 19.03(a)(2) (Vernon 2003 & Supp. 2009).  So long as the
same complainant is alleged for the predicate murder, any or all of the
alternate methods of committing capital murder as provided in section 19.03 of
the Texas Penal Code may be submitted to the jury in the disjunctive without
violating the accused’s right to jury unanimity.  See Leal v. State, 303
S.W.3d 292, 297 (Tex. Crim. App. 2009); Gamboa v. State, 296 S.W.3d 574,
584 (Tex. Crim. App. 2009).  Additionally, a general verdict is proper where
the alternate methods of committing the same offense are submitted disjunctively
if the evidence is sufficient to support a finding under any of the methods
submitted.  See Kitchens, 823 S.W.2d at 258.  

            In this case, appellant
was charged conjunctively in a two-paragraph indictment.  The first paragraph
alleged that appellant intentionally caused the complainant’s death while in
the course of committing and attempting to commit aggravated sexual assault
against the complainant.  See Tex.
Penal Code Ann. § 19.03(a)(2).  The second paragraph alleged that
appellant intentionally caused the complainant’s death while in the course of
committing and attempting to commit burglary of the complainant’s apartment.  See
id.  Because the complainant was the sole victim named for the predicate
murder and the indictment alleged alternate methods of committing capital
murder under section 19.03 of the Texas Penal Code, the State’s theories were
simply alternate methods of committing the same offense.  See Gamboa,
296 S.W.3d at 583; Huffman, 267 S.W.3d at 905.  Thus, the trial court’s
failure to include an instruction that the jury must agree on the alternate
methods of committing capital murder did not violate appellant’s right to a
unanimous jury verdict.  See Leal, 303 S.W.3d at 297; Gamboa, 296
S.W.3d at 584.  We therefore overrule appellant’s first issue.  

                                                                                                         
III.           
Sufficiency
of the Evidence

In his four remaining issues, appellant challenges
the sufficiency of the evidence.  Appellant contends in his second and third
issues that the evidence is legally and factually insufficient to show that he
caused the complainant’s death.  Appellant argues in his fourth issue that the
evidence is factually insufficient to show he committed the offense of
burglary, and appellant argues in his fifth issue that the evidence is factually
insufficient to show he committed the offense of aggravated sexual assault.  

To convict appellant of capital murder as charged in
the indictment, the State was required to prove beyond a reasonable doubt that
appellant intentionally or knowingly caused the complainant’s death while in
the course of committing or attempting to commit burglary of the complainant’s
apartment or the aggravated sexual assault of the complainant.  See Tex. Penal Code Ann. §§ 19.02(b)(1), 19.03(a)(2) (Vernon 2003 & Supp. 2009).  The evidence in a
capital murder prosecution need only be sufficient to establish one of the
underlying felonies alleged in the indictment.  See Russeau v. State,
171 S.W.3d 871, 877 (Tex. Crim. App. 2005); Matamoros v. State, 901 S.W.2d
470, 474 (Tex. Crim. App. 1995).  Because, as discussed below, we find the
evidence is legally and factually sufficient to establish that appellant intentionally
caused the complainant’s death during the course of committing aggravated
sexual assault, we need not discuss appellant’s fourth issue regarding the
sufficiency of the evidence related to burglary.  

 

A.   
Standards of Review

In conducting a legal sufficiency review, we must
view the evidence in the light most favorable to the verdict and determine
whether any rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt.  Salinas v. State, 163 S.W.3d 734,
737 (Tex. Crim. App. 2005).  We do not ask whether we believe the evidence at
trial established guilt beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 318–19 (1979).  We may not re-weigh the evidence and substitute
our judgment for that of the trier of fact.  King v. State, 29 S.W.3d
556, 562 (Tex. Crim. App. 2000).  In our review, we accord great deference “‘to
the responsibility of the trier of fact [to fairly] resolve conflicts in the
testimony, to weigh the evidence, and to draw reasonable inferences from basic
facts to ultimate facts.’”  Clewis v. State, 922 S.W.2d 126, 133 (Tex.
Crim. App. 1996) (quoting Jackson, 443 U.S. at 319).  We presume that
any conflicting inferences from the evidence were resolved by the jury in favor
of the prosecution, and we defer to that resolution.  Id. at 133 n.13  

In evaluating the factual sufficiency of the
evidence, we view all the evidence in a neutral light and will set aside the
verdict only if we are able to say, with some objective basis in the record,
that the conviction is clearly wrong or manifestly unjust because the great
weight and preponderance of the evidence contradicts the jury’s verdict.  Watson
v. State, 204 S.W.3d 404, 414–17 (Tex. Crim. App. 2006).  We cannot order a
new trial simply because we disagree with the jury’s resolution of a conflict
in the evidence, and we do not intrude on the fact-finder’s role as the sole
judge of the weight and credibility of witness testimony.  See id. at
417; Fuentes v. State, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999).  The
fact-finder may choose to believe all, some, or none of the testimony
presented.  Chambers v. State, 805 S.W.2d 459, 461 (Tex. Crim. App.
1991); Bargas v. State, 252 S.W.3d 876, 888 (Tex. App.—Houston [14th
Dist.] 2008, no pet.).  In our review, we discuss the evidence appellant
contends is most important in allegedly undermining the jury’s verdict.  Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).  We must explain in
exactly what way we perceive the conflicting evidence to greatly preponderate
against conviction if we determine the evidence is factually insufficient.  Watson,
204 S.W.3d at 414–17.  

B.    
Analysis

A person commits the offense of murder if he
intentionally or knowingly causes the death of an individual.  See Tex. Penal Code Ann. § 19.02(b)(1).  The intent to commit a
crime is almost always proven through evidence of the circumstances surrounding
the crime.  Childs v. State, 21 S.W.3d 631, 635 (Tex. App.—Houston [14th
Dist.] 2000, pet. ref’d).  The intent to kill may be inferred by the use of a deadly
weapon, and the use of a deadly weapon in a deadly manner provides an almost
conclusive inference showing the intent to kill.  Godsey v. State, 719
S.W.2d 578, 580–81 (Tex. Crim. App. 1986); Arnold v. State, 234 S.W.3d
664, 672 (Tex. App.—Houston [14th Dist.] 2007, no pet.).  A firearm is
statutorily defined as a deadly weapon.  See Tex. Penal Code Ann. § 1.07(a)(17)(A) (Vernon 2003 &
Supp. 2009).  The evidence shows that the complainant’s death resulted from a
gunshot wound to the back of her neck while she was lying face-down on her
bed.  From this, the jury could properly infer that the individual who shot the
complainant intentionally or knowingly caused her death.  See Tex. Penal Code Ann. § 19.02(b)(1); Godsey, 719 S.W.2d
at 580–81; see also Childs, 21 S.W.3d at 635 (“[W]here a deadly weapon
is fired at close range, and death results, the law presumes an intent to
kill.”).  

A person commits the offense of aggravated sexual
assault if the person (1) intentionally or knowingly causes the penetration of
the anus or sexual organ of another person by any means and without that
person’s consent and if (2) the person causes serious bodily injury or attempts
to cause the death of the victim or another person in the course of the same
criminal episode.  See Tex. Penal
Code Ann. § 22.021(a) (Vernon 2003 & Supp. 2009); Curtis v.
State, 205 S.W.3d 656, 662 (Tex. App.—Fort Worth 2006, pet. ref’d).  The
State presented evidence that one of the windows near the complainant’s front
door was broken near the time of her death.  A knife was found next to the
broken window, and there is evidence that this knife did not belong to the
complainant.  The complainant was found lying naked on her bed after being shot
in the head, and her genitals were extensively burned.  According to the
complainant’s family, the complainant was a shy and depressed young woman who
did not have a boyfriend or socialize often prior to her death.  There was no
evidence that she was sexually active with anyone prior to her death, but an
examination of her body showed recent internal trauma of her genitals.  After
considering this evidence, the jury could reasonably infer that an individual broke
into the apartment, intentionally committed sexual assault, and then killed the
complainant and burned her body in an attempt to destroy any evidence of the
assault.  See Hooper v. State, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007)
(recognizing that juries may draw multiple reasonable inferences “as long as
each inference is supported by the evidence presented at trial”); see also
Childs, 21 S.W.3d at 635 (allowing jury to infer intent from
circumstantial evidence).  

The State was also required to prove beyond a
reasonable doubt that appellant committed the charged offense.  See Roberson
v. State, 16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref’d).  Identity
may be proved by direct or circumstantial evidence, and through inference.  See
Smith v. State, 56 S.W.3d 739, 744 (Tex. App.—Houston [14th Dist.] 2001,
pet. ref’d).  Our standard of review is the same for both direct and
circumstantial evidence.  Kutzner v. State, 994 S.W.2d 180, 184 (Tex.
Crim. App. 1999).  Indeed, circumstantial evidence alone may be sufficient to
support a finding of guilt.  Guevara v. State, 152 S.W.3d 45, 49 (Tex.
Crim. App. 2004).  Each fact need not point directly and independently to
appellant’s guilt, so long as the cumulative effect of all the incriminating
facts is sufficient to support the conviction.  See Hooper, 214 S.W.3d
at 13.  DNA evidence coupled with reasonable inferences drawn from
circumstantial evidence will support a conviction.  See Hinojosa v. State,
4 S.W.3d 240, 245–46 (Tex. Crim. App. 1999) (finding defendant’s capital murder
conviction was supported by circumstantial evidence implicating defendant and
DNA evidence showing an exceptional likelihood that someone other than
defendant killed the victim); Roberson, 16 S.W.3d at 167–68 (finding
circumstantial evidence sufficient to sustain appellant’s conviction for
aggravated sexual assault even though victim could not identify her assailant
and the only direct evidence linking appellant to the charged offense was appellant’s
DNA).  

Appellant contends that his DNA could have survived
for up to four days before the complainant’s death following a consensual
sexual encounter between the two and that “evidence of some sexual encounter between
the parties does not provide sufficient legal evidence that the appellant
caused the complainant’s death.”[2] 
There is no evidence supporting appellant’s contention that he and the
complainant had consensual sex prior to the complainant’s death.  The
complainant’s parents were in nearly constant contact with the complainant and
knew of no relationship between the complainant and appellant.  Additionally,
the police were unable to find any evidence of a relationship between the two. 
The only evidence of a link between appellant and the complainant is
appellant’s DNA, which was a major contributor to DNA contained in the sperm and
semen collected from the complainant’s genitals.  Although appellant argues
this sperm and semen could have survived for several days following a sexual
encounter, Wilson testified the sperm and semen could have degraded much sooner
than that because the complainant’s body had been exposed to extreme heat after
being set on fire.  Wilson further stated that biological fluids present in
deceased individuals have a significantly shorter survival time than normal.  The
complainant’s apartment also showed signs of recent forced entry, as one of the
windows next to the front door was broken when firefighters arrived.  No one
recognized the knife found under the broken window.  The complainant’s body was
discovered in the nude, but her ex-boyfriend testified that she never slept
without clothing.  Although Wilson discovered signs of recent trauma to the
complainant’s internal genitalia, the severe burns surrounding the
complainant’s genitals made it difficult for him to find external signs of
trauma consistent with sexual assault.  

Thus, the jury was presented with evidence showing
that (1) someone broke into the complainant’s apartment, (2) the complainant
was shot while lying on her bed and then set on fire, (3) the fire originated
near the complainant’s genitals, (4) the complainant’s internal genitalia
showed signs of recent trauma, (5) the severity of the genital burns hampered
efforts to find evidence of sexual assault, and (6) although there was no
evidence of a relationship between appellant and the complainant, sexual or
otherwise, appellant’s DNA was a major contributor to the DNA found in the
sperm and semen collected from the complainant’s genitals.  Based on this
evidence, the jury could have reasonably concluded that appellant broke into
the complainant’s apartment, sexually assaulted the complainant, and then
killed the complainant and burned her body to hide evidence of the crime.  See
Guevara, 152 S.W.3d at 49 (stating circumstantial evidence alone may be
sufficient to establish guilt); Johnson v. State, 871 S.W.2d 183, 186
(Tex. Crim. App. 1993) (“[I]t is not necessary that every fact point directly
and independently to the defendant’s guilt; it is enough if the conclusion is
warranted by the combined and cumulative force of all the incriminating
circumstances.”); see also Hinojosa, 4 S.W.3d at 245.  

Appellant also argues that the State failed to prove
he was involved in the complainant’s murder because there was no
evidence—fingerprint, blood, ballistics, or otherwise—showing he was at or near
the complainant’s apartment when she was killed.  The State is not required to
produce physical evidence linking the accused to an offense.  See Lancon v.
State, 253 S.W.3d 699, 706–07 (Tex. Crim. App. 2008) (determining lack of
physical evidence alone did not render evidence factually insufficient where
other evidence linked appellant to murder, attempted murder, and deadly
conduct).  Multiple witnesses recalled seeing appellant in the area near the
complainant’s apartment, including the area just outside her apartment, before the
offense.  None of these witnesses recalled seeing appellant near the scene
after the complainant’s death.  Additionally, appellant failed to continue his
training for a new job after the murder, and did not return to his place of
employment to pick up his paycheck.  This constitutes sufficient circumstantial
evidence that, when considered with the State’s DNA evidence and the manner in
which the complainant was killed, supports a reasonable jury inference that
appellant was present at the complainant’s apartment when the offense
occurred.  

In sum, the State presented sufficient evidence from
which the jury could reasonably infer appellant’s involvement in the offense.  See
Hooper, 214 S.W.3d at 13; Roberson, 16 S.W.3d at 168.  Taken as a
whole, the evidence “support[s] the jury’s conclusion that appellant, as
opposed to some unidentified ‘suspect’ also sharing the same DNA profile,”
sexually assaulted and killed the complainant.  Hinojosa, 4 S.W.3d at 245;
see also Guevara, 152 S.W.3d at 49 (stating a conviction may be upheld
so long as it is supported by the cumulative effect of all the incriminating
facts); Swearingen v. State, 101 S.W.3d 89, 96–98 (Tex. Crim. App. 2003)
(finding the evidence legally and factually sufficient to convict defendant of
capital murder after considering all the circumstantial evidence presented).  The
jury could have reasonably concluded that appellant intentionally caused the
complainant’s death while committing, or attempting to commit, the offense of
aggravated sexual assault.  Accordingly, the relevant elements of capital
murder are supported by the evidence.  See Tex. Penal Code Ann. § 19.03(a)(2). 


After viewing the evidence in the light most
favorable to the verdict, we conclude that a rational trier of fact could find
that appellant intentionally committed each of the elements of capital murder
beyond a reasonable doubt.  See Salinas, 163 S.W.3d at 737. 
Additionally, after conducting a neutral review of the entire record, we cannot
say that the evidence preponderates against conviction or that appellant’s
conviction is clearly wrong or manifestly unjust.  See Watson, 204
S.W.3d at 414–17.  Accordingly, we find that the evidence is legally and
factually sufficient to support appellant’s conviction.  We overrule appellant’s
second, third, and fifth issues.  

 

                                                                                                                                                  
IV.           
Conclusion

Finding no reversible error, we affirm the trial
court’s judgment.  

 

                                                                                    

                                                                        /s/        Leslie
B. Yates

                                                                                    Justice

 

 

 

Panel consists of Justices
Yates, Frost, and Brown.

Do
Not Publish — Tex. R. App. P. 47.2(b).









[1] The record establishes
that appellant is African-American.  





[2] An innocent but unlikely
explanation for the presence of physical evidence does not necessarily render
the evidence legally insufficient.  See Phelps v. State, 594 S.W.2d 434,
436 (Tex. Crim. App. [Panel Op.] 1980) (holding that a plausible explanation
for defendant’s fingerprints at a crime scene did not make the evidence
insufficient).  Further, this alternate hypothesis does not render the evidence
factually insufficient and, while relevant, is not determinative in our factual
sufficiency review.  See Wilson v. State, 7 S.W.3d 136, 141 (Tex. Crim.
App. 1999); Herrero v. State, 124 S.W.3d 827, 835 (Tex. App.—Houston
[14th Dist.] 2003, no pet.).